[Civ. No. 16516. First Dist., Div. One. Mar. 14, 1956.]

BERNICE N. HELVERN, Respondent, v. ALONZO WALLACE HELVERN, Appellant.

Dodge & Evans and Philip L. Evans for Appellant.

George E. McDonald and James C. Calkins for Respondent.

PETERS, P. J.—The main problem involved in this case is whether a separation agreement entered into by a husband and wife dividing their property and providing for the support of the wife was an integrated property settlement agreement which cannot be modified, or whether the support provisions are severable, and therefore subject to modification. The trial court ruled, as a matter of law, that the agreement was an integrated property settlement agreement and not subject to modification. The husband appeals. We agree with the interpretation of the trial court.

The facts are as follows:

On February 4, 1948, the wife filed an action for divorce against her husband, charging extreme cruelty. Paragraph V of that complaint alleged:

"That plaintiff and defendant have entered into an agreement settling and determining their property rights and adjusting their rights to community property and providing for the maintenance and support of plaintiff herein. That in and by the terms and provisions of said agreement, defendant herein has promised and agreed to pay to plaintiff as alimony and for her maintenance support, the sum of $250 per month, commencing as of November 1st, 1947, so long as she shall remain single, and has further provided that in the event of the death of defendant prior to the death of plaintiff, plaintiff shall have a claim against the estate of defendant for any unpaid alimony and for all payments thereafter to become due, computed in accordance with tables of expectancy then in use in determining valuations of such future interests by the Treasury Department of the United States.

"That defendant has further agreed to transfer certain properties and assets to plaintiff herein as provided by said agreement.

"That a copy of said agreement is attached hereto, made a part hereof and marked 'Exhibit A,' and incorporated as fully and to the same extent as if at this point recopied and set forth at length and pleaded in legal effect."

The prayer of the complaint requested that: ". . . said decree approve said property settlement agreement attached hereto as aforesaid and order and direct defendant to comply with and perform each and all of the terms and provisions in said agreement on his part to be performed and to pay to plaintiff herein, the sum of $250 per month commencing as of November 1st, 1947, as and for her alimony and support, and that in the event of the death of defendant, plaintiff has a claim against his estate as in said agreement provided."

The agreement referred to was executed on December 31, 1947.

The recitals of that agreement read as follows:

"Whereas, the parties hereto are husband and wife, and because of unhappy differences between them have decided to live separate and apart; and

"Whereas, the parties hereto desire to enter into an agreement settling and determining their property rights with reference to each other, including their rights to community property and the right of . . . [plaintiff] to alimony and support from and by . . . [defendant], pursuant to the provisions of Section 159 of the Civil Code of the State of California.

"Now, therefore, in consideration of the premises and for good and valuable consideration moving from each of said parties to the other, . . ."

So far as pertinent here, the important provisions of that agreement are as follows:

Clause (1) provides that the plaintiff receives, as her sole and separate property, a 1941 Chrysler sedan automobile, 25 shares of designated stock, the real property held in joint tenancy in San Francisco, together with all the furniture and furnishings therein, a $1,000 insurance policy issued by the Central and Southern Pacific Railroad Employees' Mutual Benefit Association, and a $4,000 Government Life Insurance policy.

Clause (2) contains the provision in regard to the payment to the plaintiff of the sum of $250 per month "as alimony and for her maintenance and support" which is identical to the provisions of Paragraph V of the complaint quoted above.

Clauses (3) and (5) of the Memorandum of Agreement

provide for the payment by the husband of the certain existing debts.

Clause (6) then provides for the transfer to the husband of all of his personal effects, including his stamp collection, trunk and clothing.

Clause (8) provides for a waiver of all rights of inheritance in the estate of the other.

Clause (10) then provides as follows:

"That the execution of this agreement shall be and is intended to be a full, complete and final adjustment of all the property rights, including the community property rights, of each of the parties hereto, and that neither party shall or will at any time hereafter make or attempt to make any further or other claims against the other party hereto, excepting under the terms hereof, or incur any bills or obligations in the name of the other party hereto, and that all future obligations of the parties hereto shall be assumed and paid by the party incurring same individually."

Clause (11) then provides that the husband represents that "he has no property or assets of any kind not hereinabove mentioned, and specifically that he owns no stocks, securities, bonds or jewelry of a value in excess of $250.00 or any interest in any business, firm or enterprise, excepting the accounting firm of which he is a member."

Clause (13) provides:

"That this agreement may be introduced in evidence on the trial of any litigation for divorce between the parties hereto as a binding agreement constituting a fair and equitable settlement and adjustment of their property rights and of all of the matters herein referred to and contained, and that in any decree entered in such matter the court may find and order that the provisions in such decree contained for the support and maintenance of . . . [plaintiff] are predicated hereon."

The husband filed an answer to the divorce complaint on February 5, 1948, in which he admitted all of its allegations except the charge of extreme cruelty, which he denied, and in which he waived notice of time and place of trial, and findings.

On the same day the trial court granted an interlocutory decree of divorce to the wife, and "Ordered, Adjudged and Decreed that the property settlement agreement made and entered by the plaintiff and defendant under date of December 31st, 1947, be, and the same is hereby approved and made a

part hereof as fully and to the same extent as if herein set forth at length. Both plaintiff and defendant are hereby directed to perform each and all of the terms and provisions therein contained on their part to be performed.

"It is further hereby Ordered, Adjudged and Decreed that defendant pay to plaintiff the sum of $250.00 on the first day of each and every month, commencing as of November 1st, 1947, as alimony and for her maintenance and support, so long as she shall remain single, and that in the event of the death of defendant prior to the death of plaintiff, plaintiff shall have a claim against the estate of defendant for any unpaid alimony and for all payments thereafter to become due, computed in accordance with the tables of expectancy then in use in determining valuations of such future interests by the Treasury Department of the United States."

The final judgment of divorce was entered on March 8, 1949, and provides: "It is further Ordered and Decreed that where said interlocutory decree makes any provision for alimony said provision be and the same is hereby made binding on the parties affected thereby the same as if herein set forth in full, and that where said interlocutory decree relates to the property of the parties hereto, said property be and the same is hereby assigned in accordance with the terms thereof to the parties thereon declared to be entitled thereto."

On July 2, 1954, the husband filed a motion for an order to show cause why the final decree of divorce should not be modified by reducing the alimony payments on the ground of changed conditions. The affidavit filed in support of this motion avers that since the original order was made there has been a material change in the conditions and circumstances of the parties in that when the original order was made the husband was earning as a certified public accountant and attorney about $14,000 a year, while he is now earning but $3,500 a year. It is also averred that at the time of the interlocutory the husband was free of debt whereas he now owes in excess of $10,000.

Thereafter, the husband filed an "offer of proof" in support of his motion in which he offered to prove that when the agreement was entered into it was his intention and belief that the alimony provisions would remain subject to modification, with the agreement simply fixing the maximum amount of alimony, and that the property settlement agreement was, in fact, an illegal agreement to secure a divorce.

The trial court entered its order discharging the order to show cause, sustaining objections to the offer of proof and

denying the motion to modify the divorce decree. The objections to the offer of proof were sustained on the ground that: ". . . the interlocutory decree of divorce heretofore entered herein and the final judgment of divorce heretofore entered herein constitute an integration of the property settlement agreement executed by plaintiff and defendant and that said property settlement agreement was a final determination between the parties of all the rights of both parties, including the rights of plaintiff to support by defendant and her right to share the community property of plaintiff and defendant and that this Court has no jurisdiction to modify or amend said final decree of divorce."

From this order the husband appeals.

The law in this state is well settled that if support provisions have been made an inseverable part of the agreement between husband and wife to divide their property, and the court in the divorce action approves the agreement, the provisions of such agreement cannot thereafter be modified without the consent of both of the contracting parties. The leading case on the subject is *Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265]. At page 624 the court summarized the law on the subject as follows:

"The most difficult problems arising from such contracts are those concerning support and maintenance provisions when the agreement is presented to the court in a divorce action. The parties, upon separation, may agree to provide for support and maintenance in a variety of ways, which generally fall into three categories. The first includes contracts in which the support and maintenance provisions are in the nature of alimony, whether in lump sum or monthly payments, and are separable from the provisions that divide the property. The contract may even provide solely for support and maintenance without reference to a division of property. These contracts, if equitable, are enforceable even though not presented to the court in a divorce action. [Citation.] If presented to a court in an action for divorce the court has the power to modify the provisions for alimony before or, if the provisions are incorporated in the decree, after judgment in accord with its power over alimony generally. [Citation.]

"The second category includes, among others, contracts in which the 'support and maintenance' provisions are not in the nature of alimony but are part of the division of property. This category also includes contracts that provide

solely for the payment of monthly or lump sums 'in lieu of community property.' Such contracts must be treated like other property settlement agreements dealing solely with divisions of property. [Citation.] If the contract was not fraudulent when made, and there was no violation of the confidential relationship, it will be binding on the court and there can be no modification of the payments after the decree without the consent of the parties. [Citation.] The court in the divorce action may grant alimony to the wife and approve the agreement as well, since these agreements purport to deal only with the division of the property of the parties. [Citations.] It is often difficult to determine, in a contract containing provisions for division of property and payments of 'support and maintenance,' whether the payments are part of the division of property or are in the nature of alimony. 'It would be better practice to have that determination clearly and concisely made by the trial court when it renders the decree of divorce. Considerable confusion and uncertainty could be avoided in that fashion. The court could examine the agreement, the circumstances under which it was made, and the nature and value of the property as related to its division and the amount of the periodic payments giving consideration to the statutory rules on the subject.' [Citations.]

"The third category includes contracts in which the wife waives all support and maintenance, or all support and maintenance except as provided in the agreement, in consideration of receiving a more favorable division of the community property. The court cannot add a provision for alimony to such contracts without changing basically the agreement of the parties as to the division of their property."

These principles have frequently been reaffirmed. In *Dexter* v. *Dexter*, 42 Cal.2d 36, at page 40 [265 P.2d 873], it is stated:

"A husband and wife may contract with respect to their property (Civ. Code, § 158), and if they are living separate and apart they may provide for the support and maintenance of either of them and their children. (Civ. Code, § 159.) Moreover, as between the husband and wife, if the provisions for support and maintenance have been made an integral or inseverable part of the division of their property, and the court in a divorce action has approved the agreement, its provisions cannot thereafter be modified without the consent of both of the parties. [Citations.] . . .

". . . When, as in this case, however, the parties have made the provision for support and maintenance an integral part of their property settlement agreement, the monthly payments will ordinarily have a dual character. To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. [Citations.]"

*Fox* v. *Fox*, 42 Cal.2d 49, 53 [265 P.2d 881], added the following thought:

"The labels adopted by the parties are not conclusive, since the agreement must be considered as a whole. [Citations.] Moreover, as pointed out in the Dexter case, to the extent the monthly payments are designed to discharge the obligation of support and maintenance, they will ordinarily have some of the indicia of alimony. Similarly, the fact that the payments might be reduced under certain specified circumstances does not indicate that they were alimony." (See also *Flynn* v. *Flynn*, 42 Cal.2d 55 [265 P.2d 865]; *Finnegan* v. *Finnegan*, 42 Cal.2d 762 [269 P.2d 873]; *Lane* v. *Bradley*, 124 Cal.App. 2d 661 [268 P.2d 1092]; *Taliaferro* v. *Taliaferro*, 125 Cal. App.2d 419 [270 P.2d 1036]; *Van Dyke* v. *Van Dyke*, 126 Cal.App.2d 238 [271 P.2d 910]; *Pearman* v. *Pearman*, 104 Cal.App.2d 250 [231 P.2d 101]; see also for good discussions, 42 Cal.L.Rev. 524; 1 Armstrong California Family Law, p. 797, et seq.)

Thus, the rule of law is well settled. The problem in the instant case is to apply these principles so as to determine whether the alimony and support provisions of the agreement and decree are or are not severable from the property division provisions. ██ As evidence of severability within the agreement itself appellant refers to the recital of the agreement designating the agreement as one settling "property rights . . . including their rights to community property *and* the right of First Party to alimony and support." (Italics added.) Appellant also points out that the provision for support is in a separate paragraph (#2) from the paragraphs relating to the distribution of the property (#1, and #6), and that the $250 payment is to cease on the remarriage of the respondent. He also claims that the fact that the original divorce complaint, and the final and interlocutory decrees, make separate provisions for support and for division of the property, and because the alimony court order makes no reference to the agreement, that this is strong internal evidence

of severability. These arguments are without merit, because the purpose of such separate treatment is obviously to make the support provisions enforceable by contempt process. The Supreme Court in *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], rejected the argument that merely because the alimony provisions are separately incorporated and merged in the decree they thereby become subject to modification. The test is not whether the support provisions become part of the decree, but whether such provisions are an integral part of the separation agreement. The fact that they are separately treated and became merged in the decree is of no help in solving this problem. (See also *Finnegan* v. *Finnegan,* 42 Cal.2d 762 [269 P.2d 873].)

■ The appellant also argues that, with the exception of appellant's personal possessions, under the agreement the respondent received all of the community property and therefore it must follow that the provisions for support could not have formed any portion of the consideration for the division of the property. This argument is unsound for two reasons. The first was stated as follows in *Dexter* v. *Dexter,* 42 Cal.2d 36, at page 43 [265 P.2d 873] : "Moreover, at the time a property settlement is made, the parties may be uncertain as to which of their property is community rather than separate, and they will ordinarily not know how the court in the divorce action will find the facts or how it would, in the absence of an acceptable agreement, exercise its discretion in dividing the property and awarding alimony. The amicable adjustment of these doubtful questions with respect to the property and support and maintenance rights of the parties may alone supply sufficient consideration to support their entire agreement. . . . Moreover, since plaintiff secured her divorce on the ground of extreme cruelty, had the parties not settled their rights by agreement, the court could in its discretion have awarded plaintiff all of the community property."

■ Secondly, the argument is unsound because its basic premise—that respondent received all of the community property—is incorrect. Appellant received a stamp collection as part of the division. This may be a valuable asset. In addition, Paragraph 11 of the agreement, quoted in part *supra,* states that appellant owns an interest in the accounting firm of which he is a member. The agreement is silent as to the value of this firm, or as to its nature as community or separate property. The marriage here involved lasted for over 25 years. It is more than reasonably probable that all or part

of appellant's interest in this firm was community property. Thus, it is not true that the division of the property was not consideration for appellant's promise of support.

█ As opposed to the minor provisions mentioned above that are contained in the agreement and relied upon by appellant to show severability, there are several major provisions which demonstrate, to a reasonable certainty, the inseverable nature of the agreement. These can be summarized as follows:

1. The agreement recites that "in consideration of the premises," and then in one of the essential paragraphs, No. 2, provides for alimony and support, which thus becomes one of the "premises."

2. While the support provision provides that support will terminate on the remarriage of respondent, it then provides that, if appellant should predecease respondent, respondent shall have a claim against the estate of appellant for such support based on her life expectancy. Such provision strongly suggests that the support provisions are an integral part of the property division provisions.

3. Paragraph 10 expressly states: "That the execution of this agreement shall be and is intended to be a full, complete and final adjustment of all of the property rights, including the community property rights, of each of the parties hereto." While there is no mention here of alimony and support, the paragraph goes on to state "and that neither party shall or will at any time hereafter make or attempt to make any further or other claims against the other party hereto, excepting under the terms hereof." This would appear to constitute a waiver of maintenance and support other than as provided in the agreement.

4. This same thought is carried out by paragraph 12 which provides that all property acquired after the execution of the agreement shall be the separate property of the one who acquires it, not subject to the claims of the other—which would include alimony.

5. Then comes paragraph 13 declaring that the entire document constitutes "a binding agreement constituting a fair and equitable settlement and adjustment of their property rights and of all of the matters herein referred to and contained, and that in any decree entered in such matter the court may find and order that the provisions in such decree contained for the support and maintenance of First Party are predicated hereon."

Frequently, in such agreements, there appears an express waiver by the wife of any right to support and maintenance, other than as provided in the agreement, in consideration of the wife's receiving the major portion of the community property. Such express waiver is conclusive evidence that the support provisions are inseverable from the property division provisions. (See *Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265]; *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873]; *Finnegan* v. *Finnegan*, 42 Cal.2d 762 [269 P.2d 873]; *Taliaferro* v. *Taliaferro*, 125 Cal.App.2d 419 [270 P.2d 1036]; *Van Dyke* v. *Van Dyke*, 126 Cal.App.2d 238 [271 P.2d 910].)

In the instant case, there is no express waiver of alimony and support except as provided in the agreement. But such a waiver is necessarily implied from the many provisions of the agreement summarized above. That being so, the agreement, on its face, shows that the alimony and support provisions are inseverable from the property division provisions. Therefore, the agreement cannot be modified against the will of either party.

■ Defendant's offer of proof was properly rejected. Even if the agreement were ambiguous on the issue of severability of the support provisions so that parol evidence would be admissible on the issue of intent (*Flynn* v. *Flynn*, 42 Cal.2d 55 [265 P.2d 865]; *Taliaferro* v. *Taliaferro*, 125 Cal.App.2d 419 [270 P.2d 1036]; *Van Dyke* v. *Van Dyke*, 126 Cal.App.2d 238 [271 P.2d 910]), the proffered extrinsic evidence was not admissible. The appellant, who is an attorney, offered to prove that: "Defendant . . . believed at such time that the alimony provisions of any decree of divorce would remain subject to the power of modification . . . upon a proper showing"; that "Defendant intended that the agreement serve only to place a limit on the maximum alimony demand" of plaintiff; that "Defendant intended that, as to the alimony provisions, the agreement be only admissible in evidence . . . and be not binding on the Court." Thus, all that appellant offered to prove was that his personal, undisclosed intent was that the alimony provisions were to be severable. No offer is made to show that such intent was ever communicated to the other contracting party. As already pointed out, the agreement does not disclose such intent. It needs no citation of authority to support the proposition that in determining intent in such a case an objective and not a subjective standard is imposed. Thus, the proffered evidence was inadmissible.

■ The appellant also offered to prove that the entire agreement was illegal and void. Appellant states that the property settlement agreement was not a bona fide agreement under section 159 of the Civil Code because the parties had been separated for 6 months when it was executed, during which time respondent had been demanding separate maintenance with an award for support, and appellant signed the agreement to induce respondent to procure a decree of divorce. Therefore, says appellant, the agreement was in fact one made in contemplation and consideration of divorce, and hence illegal. This, appellant offered to prove. The complete answer to this contention is to be found in *Hill* v. *Hill*, 23 Cal.2d 82 [142 P.2d 417]. That case involved facts almost identical to the offer of proof here. The trial court held the separation agreement to be illegal. This, the Supreme Court reversed, stating (p. 93): "Public policy seeks to foster and protect marriage, to encourage parties to live together, and to prevent separation. [Citations.] But public policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed. [Citation.] In the absence of fraud, collusion or imposition upon the court, public policy does not prevent parties who have separated from entering into a contract disposing of their property rights which shall become effective only in the event one of the parties obtains a divorce, even though such a contract may be a factor in persuading a party who has a good cause for divorce to proceed to establish it." (See also *Briner* v. *Briner*, 63 Cal.App.2d 429 [146 P.2d 709], and *Miranda* v. *Miranda*, 81 Cal.App.2d 61 [183 P.2d 61].)

It is true that this agreement, in view of appellant's greatly reduced income as set forth in his affidavit, works a great hardship on appellant. But it might have worked the other way. Had appellant's income and respondent's needs increased, respondent could not have secured an increased allowance. On December 31, 1947, appellant was willing to enter into the agreement and apparently willing, tested by the objective standard, to have the support provisions an inseverable part of the property provisions of the agreement. We have no power to relieve him simply because the contract has turned out to his disadvantage.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.