[Civ. No. 25666. Second Dist., Div. One. Dec. 27, 1961.]

LAURA G. CLARK, Plaintiff and Respondent, v. J. ROSS CLARK II, Defendant and Appellant.

Walter H. Young for Defendant and Appellant.

Guthrie, Darling & Shattuck, Darling, Shattuck & Edmonds and Thomas F. Call for Plaintiff and Respondent.

LILLIE, J.—The main problem at bar, one of reoccurring frequency in this field of the law, is whether a separation agreement between a husband and wife dividing their property and providing for the wife's support was an integrated (non-severable) agreement not subject to modification, or whether the support provisions therein are severable and, therefore, modifiable upon application to the trial court. In the present case, such application was made more than seven years after the entry of the final decree of divorce which adopted the terms of the interlocutory judgment; the latter, rendered by default in 1952, provided *inter alia* that "the Property Settlement Agreement is approved, marked exhibit 1, attached hereto, incorporated herein and made a part hereof as though set forth herein in full and the parties are ordered to comply with all the terms thereof."[1] It was concluded below that the agreement, as a matter of law, was an integrated property settlement agreement and not subject to modification. The husband has appealed.

It appears that the husband's circumstances have changed since the parties were divorced, and continued payments to the plaintiff would assertedly work a hardship on his present family. In January 1961, upon his declaration in support thereof, an order to show cause was issued; counsel for the wife moved to dismiss said proceeding upon the ground, among others, that the order sought to be modified was based upon an "underlying integrated property settlement agreement." No oral testimony was taken, the matter being heard upon the points and authorities on file, argument of counsel and various documents (made a part of the clerk's transcript), including the subject agreement. As is customarily the case, we examine the pertinent provisions thereof to ascertain whether the husband's argument is sustainable.

Before doing so, however, we dispose of the claim made by respondent that the nature of the property settlement agreement has previously been determined by the trial court and is now res judicata; such claim, apparently not urged below as a ground for dismissal of the order to show cause, was not passed upon by the trial court. The interlocutory judgment of divorce included the finding and determination that the contract of the parties was "a fair and just property settlement agreement, settling and adjusting the property rights of plaintiff and defendant arising out of the marital

---

[1] The quoted portions commencing with the words "marked exhibit 1" were added (by interlineation) by the court.

relationship . . .'' The above findings and determinations were presumably inserted by the wife's counsel pursuant to Clause (12) of the contract which provides that ''If a divorce is granted to either party against the other, the parties hereto agree that the terms of the agreement may be submitted to the court for approval and that the provisions may be incorporated in and become a part of both the interlocutory and final decrees of divorce . . .''

The husband appealed from neither the interlocutory nor final decree. *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865], holds that an express order (incorporated in the decree) that the parties perform the agreement is proof of an intent to merge, while *Plumer* v. *Plumer,* 48 Cal.2d 820 [313 P.2d 549], declares that an agreement which is both merged *and* integrated is not modifiable. ▪ The interlocutory judgment in the present case did not, however, determine that the subject agreement was integrated as such, nor was the nature of the agreement in issue; ''The fact . . . that an agreement recites that it is a property settlement agreement, or the fact that a divorce decree refers to an agreement as a property settlement agreement, is not necessarily determinative of the question whether a provision therein for periodic payments for support of a wife is an inseparable part of a property settlement agreement, which cannot be modified by the court without consent of the parties; nor is such a recital or reference necessarily determinative of the question whether such provision is a provision for support that is separable from and independent of the provisions for division of property, which can be modified by the court. (See *Puckett* v. *Puckett,* 21 Cal.2d 833, 840-842 [136 P.2d 1].)'' (*Sasanoff* v. *Sasanoff,* 120 Cal.App.2d 120, 127 [260 P.2d 840].) ▪ Had there been a prior modification proceeding in the instant case, with no appeal from the order then rendered, respondent's present point might be well taken. Illustrative is *Hough* v. *Hough,* 26 Cal.2d 605 [160 P.2d 15], where the agreement of the parties, which was incorporated in the decree, called for the husband to pay $200 per month to the wife. Six years later, on the husband's application, the payments were reduced to $100 per month. Eight years later, the wife sued for the difference, contending that the court lacked power to make the modification order. The court held that the nature of the agreement was in issue at the time the modification was sought, and the court's order of modification was a binding determination that

the agreement and decree were for alimony. See also *Hoerner* v. *Superior Court,* 182 Cal.App.2d 500 [6 Cal.Rptr. 178].

█ It is also contended by respondent that the trial court did not retain jurisdiction to modify the payments to the wife; this point was likewise not passed upon below. In this regard it is said that "none of the payments were described as being either 'alimony' or for the 'support and maintenance' of the wife, nor was there any reservation of jurisdiction to make such a future order." Cited is a statement from *Dexter* v. *Dexter,* 42 Cal.2d 36, 42 [265 P.2d 873], that "In the absence of an order for the payment of alimony in the interlocutory decree . . . or a reservation of jurisdiction to make such an order in the future, the court cannot, after the interlocutory decree has become final, add a provision for alimony or modify the amount of payments ordered pursuant to a property settlement agreement." We do not think that the quoted statement of the law is here applicable; true, the payments are not referred to as "alimony" in the portion of the decree mentioned by respondent; but other portions of the decree incorporated the agreement "as though set forth herein in full and the parties are ordered to comply with all the terms thereof." The decree, therefore, became no different than the language of the agreement itself. As in *Dexter,* "the interlocutory decree itself did not purport to determine the character of the payments. It merely ordered defendant to make them pursuant to the terms of the agreement and thus made clear that judgment remedies including contempt would be available for the enforcement of his obligations." (P. 42.)

This brings us to the decisive question as to the exact nature of the agreement at bar. The recitals thereof read as follows:

"That, Whereas, the parties have, until their separation on or about May 1, 1952, been living together as husband and wife but now find themselves unable to continue living together, and by these presents seek to separate their property and domicile, and agree upon and for the future and support and maintenance of the wife.

"Now, therefore, it is mutually agreed between the parties as follows:"

Insofar as pertinent the important provisions of the agreement are as follows:

Clause (2) declares that there is community property of the parties, the extent and value of which are agreed upon.

Clause (3) recites that the husband's gross income for 1951

was $103,803.13, and the wife's gross income for the same period was $15,634.22.

In Clause (4) it is provided as follows:

"The parties hereto by this agreement intend to and do hereby settle and define their rights, duties and obligations with respect to each other and with respect to their property and rights in property now owned or possessed or hereafter to be acquired.

"Each of the parties specifically waives and relinquishes any and all claims for alimony, support or maintenance or for attorneys' fees or costs of suit, except as herein expressly provided for."

Clause (5) states that each of the parties may engage in any business or employment for his or her own account and benefit free from any control by the other party, such future income to be free from any claims by the other party except as expressly provided for in the agreement.

Clause (6) makes provision for the execution of income tax returns, joint or separate (at the husband's option) for income up to the date of the agreement. The same clause also provides that the wife shall assume full liability "for any taxes on all of her income (including alimony paid to the wife hereunder)" received after the date of the agreement.

Among other things, Clause (7) provides as follows:

"Except as herein expressly set forth, or as may arise out of the making of this agreement, or as may be set forth in any written document executed concurrently herewith, each of the parties does hereby release the other of and from any and all claims and demands for damages of any and every nature which either of the parties ever had, now has, or may hereafter have against the other arising out of or in connection with any matter or thing whatsoever up to the date hereof."

Clause (8) recites:

"All of the earnings and/or accumulations of the husband of every kind or nature whatever from and after the date of the execution of this agreement, shall be and remain his sole and separate property and estate and shall not be nor be deemed to be community property at any time whatever, or at all.

"All of the earnings and/or accumulations of the wife of every kind or nature whatever from and after the date of the execution of this agreement shall be and remain her sole and separate property and estate and shall not be nor be deemed to be community property at any time whatever, or at all."

Clause (11) provides:

"It is agreed that no audit has been made of the financial affairs of the parties, and that they each rely upon the facts as represented to each of them by the other, and that the covenant hereinafter made to pay and receive alimony for the wife is made in contemplation of 1951 income and is deemed fair and proper by the parties.

"The parties have disagreed as to the existence of, extent of and value of their community property and in settlement of those disagreements.

"It Is MUTUALLY AGREED that the current market value of such community property of the parties is Two Hundred Thousand Dollars ($200,000.00), and that the husband agrees to deliver to the Wife and the Wife agrees to accept from the Husband as a transfer to her of all of her right, title, and interest in the community property of the parties the sum of Forty Thousand Dollars ($40,000.00) in cash upon the execution of this agreement, and Sixty Thousand Dollars ($60,000.00) in cash in one hundred and sixteen (116) monthly installments of Five Hundred Dollars ($500.00) each, and thereafter two (2) installments each in the amount of One Thousand Dollars ($1,000.00), which shall be delivered to the Wife upon the first day of each and every calendar month, beginning September 1, 1952, until said sum of $60,000.00 shall have been so delivered; provided, however, that the Wife's death before delivery of the last of said installments shall terminate the Husband's obligation to deliver any further installments of said $60,000.00 then remaining undelivered except any installments which are then due but remain then unpaid.

"The Husband agrees to pay the Wife as alimony for her support and maintenance the sum of One Thousand Dollars ($1,000.00) per month on the first day of each calendar month, beginning September 1, 1952, to and including the first day of August, 1955, irrespective of her possible divorce and remarriage during the period September 1, 1952, to August 1, 1955, and to continue such monthly alimony payments of $1,000.00 to the Wife after August 1, 1955, so long as the Wife shall not then have married or thereafter marry a person, other than the Husband, until August 1, 1957. After August 1, 1957, if the Wife shall not then be married to a person other than the husband, and until her death or marriage to a person other than the Husband, the Husband will continue to pay the Wife such monthly installments of alimony

but in the lesser amount of Seven Hundred Fifty Dollars ($750.00) per month.'' (It is this provision for the payment of $750 per month that is the subject of this appeal.)

''The above and foregoing covenants of the Husband to pay alimony to the Wife and to transfer to her her share of the community property in installments shall, should the Husband predecease the Wife, be binding upon the heirs, executors, and administrators of the Husband and shall become a valid liability to be performed by his estate and a valid claim against his estate.''

Clause (12) states:

''The parties distinctly understand and agree that this agreement is not made in contemplation of divorce, nor is there any agreement between the parties that either party hereto shall not defend against any action for divorce which may be brought by either party hereto; provided, however, that this agreement is made without prejudice to the rights of either party hereto to sue for divorce, and this agreement shall be effective and remain in full force and effect according to its terms whether or not any party hereto seeks a divorce at any time hereafter.

''If a divorce is granted to either party against the other, the parties hereto agree that the terms of this agreement may be submitted to the court for approval and that the provisions hereof may be incorporated in and become a part of both the interlocutory and final decrees of divorce which may be entered in any such action and may be enforceable as part of any such decree or decrees.''

What constitutes an integrated agreement depends primarily upon the intent of the parties reflected mainly in the terms and provisions of the instrument—this proposition is conceded by both parties. Likewise conceded is the principle that there is no inflexible standard for measuring such intent.

''The document is to be viewed from and within its four corners and where, as here, there is no extrinsic evidence the question of its meaning is one of law.'' (*Kelley* v. *Kelley*, 151 Cal.App.2d 228, 233 [311 P.2d 90].) Again, ''No single factor can be relied upon in any given case to determine whether monthly payments are in the nature of property or alimony. The agreement must be taken as a whole and consideration given as to the circumstances under which it was made . . .'' (*Pearman* v. *Pearman*, 104 Cal.App.2d 250, 253 [231 P.2d 101].)

The first indication of the parties' intent to create alimony payments, says appellant, is that the payments are designated as such in the agreement and not by way of a property settlement. In a hybrid agreement, like the instant one, "The labels adopted by the parties are not conclusive, since the agreement must be considered as a whole." (*Fox* v. *Fox*, 42 Cal.2d 49, 53 [265 P.2d 881].) While it was observed in *Kelley* v. *Kelley, supra,* that the "labels" used are entitled to consideration as indicative of actual intention, the terminology adopted is not conclusive (*Pearman* v. *Pearman, supra,* at p. 254), but only superficial and not inconsistent with a finding that an integrated agreement was intended. (*Grolla* v. *Grolla,* 151 Cal.App.2d 253, 258 [311 P.2d 547].)

Appellant also points to the provision (Clause (11)) that "the covenant hereinafter made to pay and receive alimony for the wife is made in contemplation of 1951 income and is deemed fair and proper for the parties"; since the appellant's income for 1951 ($103,803.13) was expressly set forth in the agreement, it is argued that the statement of his income provided a foundation for future increases or reductions as the parties' circumstances changed. We are not impressed with this claim. Future support payments to respondent were specifically set forth for almost five years under varying circumstances; accordingly, how could they have any relationship to the appellant's 1951 income? Indeed, if the parties had intended modifiable alimony payments, such detailed support provisions would have been wholly unnecessary. Necessarily governed by what we have just said is appellant's further claim that payments of $750 per month (after August 1, 1957) for the indefinite period of respondent's life or until she remarries indicate that such payments are alimony.

Next, Clause (6) provides that "the Wife shall assume full liability for any taxes on all of her income (including alimony paid to the Wife hereunder) received after said date"; appellant makes the novel claim that respondent's agreement to pay an income tax on the payments designated as alimony "is strong evidence that the payments were in fact intended to be alimony." However, payments under an agreement such as this are said to possess a "dual character." (*Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 41.) As there stated, "To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. [Citations.] On the other

hand, to the extent that they represent a division of the community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony, and accordingly cannot be modified without changing the terms of the property settlement agreement of the parties.'' We are not sitting as a federal tax court in the instant case and any decision of the tax problems attending agreements of this kind would be dictum. For those disposed, the subject is extensively treated in 42 California Law Review 447, 452 et seq.

The remainder of appellant's argument, save for one point to be mentioned later, challenges the implied finding below that the provisions for support were an integral and inseverable part of the division of the parties' property. Thus, it is said that the agreement is barren of any statement that the support provisions constitute reciprocal consideration for the property provisions; appellant concedes, however, that the absence of such a statement ''is not conclusive if there is other proof of the parties' intent.'' Appellant also points to the provisions of Clause (14) to the effect that ''If any part or portion of this agreement shall be deemed or be declared to be invalid or unenforceable, then such part or portion shall be disregarded, but all of the other provisions hereof shall remain in full force and effect.'' Notwithstanding appellant's claim that this ''severability clause'' clearly indicates that each provision would stand alone on its merits, it can be reasonably inferred that the only circumstance under which a part of the agreement is to be considered severable from the remaining parts is when such part is ''*invalid or unenforceable.*'' The parties certainly had the right to provide that a final and complete agreement with respect to their marital rights could be reached even if only one portion of their agreement was later found to be unenforceable. Finally, it is argued that the payments constituting a transfer of respondent's interest in the community property are distinctly separated from those made to her for support and maintenance. This last point is wholly without merit, the purpose of such separate treatment being to make the support provisions enforceable by contempt process. See *Helvern* v. *Helvern*, 139 Cal.App.2d 819, 827-828 [294 P.2d 482].

 Opposed to the provisions mentioned above, there are several major provisions in the subject agreement which stamp it as being of an inseverable nature. First, it is stated in Clause (4) that each of the parties specifically waives and

relinquishes any and all claims for alimony and support except as therein provided. An express waiver by the wife, such as that found here, is always considered significant evidence that the support provisions are inseverable from the division of property (*Helvern* v. *Helvern, supra,* 139 Cal.App.2d 819, 830). Second, the agreement recites that the parties are in doubt as to the nature and extent of the community property. In *Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 43, the court said: "Moreover, at the time a property settlement is made, the parties may be uncertain as to which of their property is community rather than separate, and they will ordinarily not know how the court in the divorce action will find the facts or how it would, in the absence of an acceptable agreement, exercise its discretion in dividing the property and awarding alimony. The amicable adjustment of these doubtful questions with respect to the property and support and maintenance rights of the parties may alone supply sufficient consideration to support their entire agreement. (*Bennett* v. *Bennett,* 219 Cal. 153, 159 [25 P.2d 426].) Thus in the present case, the parties recited that they desired to settle their property and support and maintenance rights 'by friendly agreement, instead of resorting to court for said purpose.' "

Third, the support provisions state that if the husband shall predecease the wife, the covenants by the husband to make such payments shall be binding upon his estate. Pertinent is this statement in *Helvern* v. *Helvern, supra,* at p. 829: "While the support provision provides that support will terminate on the remarriage of respondent, it then provides that, if appellant should predecease respondent, respondent shall have a claim against the estate of appellant for such support based on her life expectancy. Such provision strongly suggests that the support provisions are an integral part of the property division provisions."

Fourth, Clause (11) states in part that from September 1, 1952, to August 1955, the wife is to receive monthly payments regardless of her remarriage at any time during that period. *Plumer* v. *Superior Court,* 50 Cal.2d 631, 636 [328 P.2d 193], is in point: "With respect to the monthly payments for the wife, the parties' express provision for the duration of such payments further shows that such payments represented 'the result of a bargain negotiated by [them] in adjustment of their respective interests' in their property settlement rather than the mere recognition of a law-imposed obligation. (*Brad-*

*ley* v. *Superior Court, supra,* 48 Cal.2d 509, 522 [310 P.2d 634].) Thus it appears that the parties' agreement and decree provided for monthly payments for the wife which were to continue for a fixed period of five years regardless of the wife's remarriage at any time within that period. Furthermore, the court could not terminate but could only modify, subject to the contractual limitation, such monthly payments. (*Plumer* v. *Plumer, supra,* 48 Cal.2d 820, 826.) Here again, if the provisions of the agreement and decree for monthly payments for support of the wife had been severable provisions for alimony, the court could not have continued such payments beyond the time of the wife's remarriage and could have terminated such payments at any time upon a proper showing.''

It should be further noted that the parties in the preamble ''propose to separate their property and domicile and agree upon and for the future support and maintenance of the wife''; in another portion of the agreement they release each other from any and all claims arising out of marital relationship, and in still another part of their contract it is stipulated that any property thereafter acquired would be his or separate property as the acquiring party. Although appellant correctly points out that there is no express declaration that an integrated agreement is intended, there may be other proof absent such a provision that such was the parties' intention. (*Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 41.)

While it was said in *Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881], that ''In the absence of conflicting extrinsic evidence, the interpretation placed upon the agreement by the trial court is not binding on this court [an appellate court] on appeal,'' it was also stated in *Teater* v. *Good Hope Dev. Corp.,* 14 Cal.2d 196, 210 [93 P.2d 112], that '' 'When the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable.' '' In a proper case it has also been said that a reviewing court has the right to conclude that ''the provisions supporting an inference of nonseverability outweigh those that support the inference of severability.'' (*Grolla* v. *Grolla,* 151 Cal.App.2d 253, 260 [311 P.2d 547].) *Plumer* v. *Plumer, supra,* 48 Cal.2d 820, so often cited in this and related litigation, was similarly decided: ''The *inference* is clear that the parties intended an integrated

agreement. It is not necessary that the parties expressly recite such an intent when the agreement itself makes the intent clear.'' (Emphasis added.) (P. 825.) Although appellant earnestly argues that this is a case where we should 'not look to balance inferences of severability against those of non-severability,'' we have concluded that we are obliged to do so under the factual situation at bar and in the light of the discussion of the several points on appeal, pro and con. The agreement at bar will doubtless work a hardship on appellant in view of the statements made in his declaration; but, as observed in the *Helvern* case, it might have worked the other way. Public policy favors the stability of binding contracts dividing marital property and finally settling rights and obligations of support. (*Adams* v. *Adams*, 29 Cal.2d 621 [177 P.2d 265].)

Finally, there is no merit to appellant's claim that the 1959 amendment to section 139 of the Civil Code indicates an intent to retain judicial control over integrated agreements and therefore governs the instant litigation. To the contrary, its provisions are clearly prospective in character: ''The amendments to the second paragraph of this section . . . are effective only with respect to property settlement agreements *entered into after the effective date of such amendments.*'' (Emphasis added.) Too, the pertinent portion of the 1959 amendment governs child support orders and has no application to alimony for the wife's support.

For the reasons stated, the order is affirmed.

Wood, P. J., and Fourt, J., concurred.