[L. A. No. 26817. In Bank. May 23, 1963.]

ELIZABETH P. DEAN, Plaintiff and Appellant, v.
D. JARVIS DEAN, Defendant and Respondent.

Martin J. Weil for Plaintiff and Appellant.

Martineau & Martineau, Glenn B. Martineau and Gerald R. Knudson, Jr., for Defendant and Respondent.

SCHAUER, J.—Plaintiff appeals from an order reducing during certain months of the year and for a limited period of time the monthly alimony payments awarded to her under an interlocutory judgment of divorce. As will appear, we have concluded that the evidence supports the implied finding by the trial court of changed conditions warranting the temporary modification, and that the order should be affirmed.

From the record it appears that the parties were married in 1940 and separated in 1956. Two daughters born of the marriage were, at the time the interlocutory judgment was entered in September 1958, of the ages of 14 and 16 years, respectively. Their custody was awarded to plaintiff.

The interlocutory decree also provided for division of the community property. Plaintiff was awarded the home of the parties in San Marino, California (subject to an encumbrance), together with the furniture in that home and a 1953 automobile. Defendant was awarded a summer house at Newport Beach, California (likewise encumbered), as well as the furniture therein, a 1955 automobile, and certain shop and photographic equipment. Defendant was also ordered to name the two minor children as beneficiaries of certain insurance policies and to maintain such policies by paying the premiums thereon until the youngest child reached 21 years of age; the policies had no net cash value above outstanding loans against them at the time of the decree.

Defendant was further ordered to pay to plaintiff the sum of $425 a month for her own support and maintenance, plus support money of $100 a month for each of the minor daughters. In February 1960, by which time the elder daughter, Mary Ann, was enrolled in college, the interlocutory judgment was modified pursuant to stipulation of the parties to provide that "in any year when" Mary Ann "shall be regularly enrolled in a college or university" the $100 a month for her support "shall be paid" directly to her; except during the months of June, July and August of each year, and, further, that defendant "shall . . . pay such additional expenses as may be required for the support of said child while she is away at college," as well as for certain dental work for Mary Ann.

In September 1961 by order to show cause defendant sought reduction of the alimony payments to plaintiff. Following a

hearing the court in November 1961 ordered a modification *"in the following respects only*: When the minor child, Mary Ann Dean, is attending . . . any . . . college, the defendant is ordered to pay to plaintiff as alimony the sum of $300 a month . . .'' (italics added) rather than the $425 originally ordered. This appeal by plaintiff followed.

The general rule is that the trial court is without authority to order a reduction in the amount of alimony or support payments awarded in a decree of divorce in the absence of a showing that there has been a change in conditions subsequent to the entry of such decree; the court may, however, modify a support order because of changed circumstances (Civ. Code, § 139); whether the modification is warranted depends on the facts and circumstances of each case; the propriety of the modification rests in the first instance in the sound discretion of the trial court; and an appellate court will not interfere with the trial court's action unless, as a matter of law, an abuse of discretion is shown. (*Bratnober* v. *Bratnober* (1957) 48 Cal.2d 259, 261-262 [1, 2] [309 P.2d 441]; *Primm* v. *Primm* (1956) 46 Cal.2d 690, 694 [3] [299 P.2d 231].) Further, any conflicts in the evidence or in reasonable inferences to be drawn from the facts will be resolved in support of the decision of the trial court. (*Primm* v. *Primm* (1956), *supra,* 46 Cal.2d 690, 693-694 [1, 2]; *Leupe* v. *Leupe* (1942) 21 Cal.2d 145, 152 [4] [130 P.2d 697].)

Applying these rules to the case at bench it appears that the trial court's order reducing, only for the period Mary Ann was to be in attendance at college, the monthly alimony defendant was required to pay to plaintiff finds substantial support in the evidence, and that no abuse of discretion is shown.

Defendant is employed as Regional Supervisor by the Aetna Life Insurance Company. His net income (salary and commissions) after business expenses in 1958 (the year the support awards were originally made) was some $19,000; in 1959 it was $20,773; in 1960 it had increased to $22,767. By September 1961 when the subject alimony modification was ordered, he was receiving a gross salary of $24,600, which was some $375 higher than the gross in 1960; he did not yet know what his net income would be for 1961, but commissions earned by him during the first nine months of 1961 were substantially *less* than they had been for the two preceding years.

Defendant testified that meantime his outlay for tuition and

expenses required for Mary Ann, who was attending college at the University of Oregon, amounted to $3,500 a year; that some $2,000 in medical and dental bills for Mary Ann had been paid by him during her first two years of college; that during the past two summer vacations Mary Ann had held a job for which she was paid some $250 a month. Defendant had further been obliged to increase the encumbrance on the summer house at Newport Beach and to borrow an additional $2,800 in order to convert that house into a permanent residence and a suitable place for business entertaining. He had also secured a loan of $3,300 with which he purchased an inboard ski boat, which he used primarily for business entertaining—a method which had proved successful. Since the interlocutory decree business conditions in his field had, according to defendant, become increasingly competitive, and necessitated the expenditure by him of greater energy and funds to keep up his production. Such expenditures, together with payments upon the various loans above mentioned, and a further personal loan of $2,400, plus Mary Ann's college expense, had reached the point that, at the time of the modification order in September 1961, defendant's monthly expenses exceeded his net income by some $325 exclusive of the alimony payments to plaintiff.

Plaintiff's situation had also changed after the interlocutory decree in 1961. She sold the house which she had been awarded, and received for it $24,832.92 net after payment of expenses and encumbrance. Of this sum she used approximately $11,000 to purchase a new home, with monthly payments of $99 compared to payments of $121.63 on the prior home. Another $2,650 was used by plaintiff to purchase a new automobile, and $830 to pay medical and other expenses. The balance was divided about evenly between savings accounts and income producing securities.

Prior to plaintiff's marriage to defendant she had been a school teacher in the State of Michigan, but she had not qualified as a teacher in California. Following the interlocutory decree she had on occasion worked as a saleslady and in a real estate office, but she was not employed at the time of the hearing on the subject modification matter. Our attention has been directed to no reason why plaintiff did not have permanent employment or why she had not sought to qualify as a teacher in this state. Our law makes provision for persons who have had teaching experience in other states, who are not otherwise ineligible, to qualify for teaching in Califor-

nia schools with provisional credentials, or with temporary status. (See Ed. Code, §§ 13117-13119; 5 Cal. Adm. Code 602 et seq.) So far as appears from the record plaintiff enjoys good health and is able to work. Further, the youngest child of the parties had reached the age of 17 years at the time of the hearing, and presumably did not require plaintiff's constant presence and care at home. On the record it does not appear unreasonable for the trial court to have concluded that the time had come for plaintiff to make more of an effort to earn a larger share of her income through her own work, thereby indirectly assisting to some extent in meeting the extra expenses of sustaining Mary Ann in college. This would seem to be a project in which both parents might properly share.

Obedient to the rules governing appellate review, it is apparent from what has been said above that the trial court could find that in the three-year interval between the interlocutory decree and the modification hearing the financial circumstances and obligations of the defendant had worsened, while those of plaintiff had improved. The trial court heard and observed the parties as witnesses and it was for that court to determine whether the defendant's increased expenses were justified in his efforts to maintain his earnings, and whether the temporary limited reduction in plaintiff's alimony was warranted. Under the circumstances it is not shown as a matter of law that the trial court abused its discretion.

The modification order is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.