[Civ. No. 28026.   Second Dist., Div. One.   July 3, 1964.]

ETHEL WISE, Plaintiff and Appellant, v. WALTER WISE, Defendant and Respondent.

Lawson M. Brown for Plaintiff and Appellant.

Jacques Leslie and Gordon P. Levy for Defendant and Respondent.

LILLIE, J.—Appeal is taken by plaintiff from an order modifying alimony award.

On June 4, 1957, the parties entered into a property settlement agreement, among other things, dividing the community property, providing for the custody and support of two minor children, and fixing the amount of support, maintenance and alimony for plaintiff wife in an amount equal to 35 per cent of defendant's gross income, payable monthly (a minimum of $250 and a maximum of $700 per month), to continue ''until the wife remarries, or until the death of either party hereto, or until further order of the Court.'' On July 31, 1957, an interlocutory judgment of divorce was entered approving, but not incorporating therein, the property settlement agreement; the judgment provides for custody and support of two minors, age 20 and 16, alimony, attorneys' fees and sale of the family home and division of the proceeds. The language of the support provisions of the property settlement agreement was carried over into the interlocutory decree, and the court fixed the amount of alimony ''equal to 35 per cent of his (defendant's) gross income, payable monthly (a minimum of $250 and maximum amount of $700 per month) . . . continuing until the plaintiff remarries, or until the death of either of the parties hereto, or until further order of Court.'' On April 26, 1963, defendant, by order to show cause, sought to modify the alimony provision to change the monthly payments to a fixed sum of $300 per month on the ground that conditions for both parties had changed. Appeal is taken by plaintiff from the order allowing the modification.

Citing numerous cases in which the courts have held the property settlement agreement to be an integrated agreement (*Di Marco* v. *Di Marco*, 60 Cal.2d 387 [33 Cal.Rptr. 610, 385 P.2d 2] ; *Plumer* v. *Plumer*, 48 Cal.2d 820 [313 P.2d 549] ; *Messenger* v. *Messenger*, 46 Cal.2d 619 [297 P.2d 988] ; *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873] ; *Clark* v. *Clark*, 198 Cal.App.2d 521 [17 Cal.Rptr. 652] ; *Grolla* v. *Grolla*, 151 Cal.App.2d 253 [311 P.2d 547]), appellant contends that the support provision is an integral or inseparable part of the division of community property and, the court having ap-

proved the agreement in the interlocutory decree, it could not be modified without the consent of the parties.

It is well established that an integrated property settlement agreement approved by the court and incorporated in the decree is not thereafter subject to modification (*Dexter* v *Dexter*, 42 Cal.2d 36 [265 P.2d 873]; *Flynn* v. *Flynn*, 42 Cal.2d 55 [265 P.2d 865]; *Messenger* v. *Messenger*, 46 Cal.2d 619 [297 P.2d 988]; *Ebert* v. *Ebert*, 185 Cal.App.2d 293 [8 Cal.Rptr. 203]; *Carson* v. *Carson*, 179 Cal.App.2d 665 [4 Cal.Rptr. 38]; *Campbell* v. *Campbell*, 178 Cal.App.2d 77 [2 Cal.Rptr. 710]; *Helvern* v. *Helvern*, 139 Cal.App.2d 819 [294 P.2d 482]), but that an alimony award, even though it originates in a contract, may be thereafter modified. (*Hough* v. *Hough*, 26 Cal.2d 605 [160 P.2d 15]; *Kroupa* v. *Kroupa*, 91 Cal.App.2d 647 [205 P.2d 683]; *Wylie* v. *Wylie*, 26 Cal. App.2d 167 [79 P.2d 152]; *Bechtel* v. *Bechtel*, 124 Cal.App. 617 [12 P.2d 970].) Thus "[W]hen an order for support payments in a divorce decree is based upon an agreement of the parties, the possibility of subsequent modification of the order without the consent of both parties depends upon the nature of the agreement." (*Plumer* v. *Plumer*, 48 Cal.2d 820, 823 [313 P.2d 549]); and whether the decree merely incorporates or approves an integrated nonmodifiable property settlement agreement or a severable and modifiable alimony award based upon the terms of an agreement, depends upon the circumstances of each case.

"An agreement between husband and wife providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement will be deemed conclusive evidence that an integrated agreement was intended (*Plumer* v. *Plumer*, 48 Cal.2d 820, 825[6] [313 P.2d 549]; *Messenger* v. *Messenger*, 46 Cal.2d 619, 628 [2b, 3b] [297 P.2d 988].)" (*Di Marco* v. *Di Marco*, 60 Cal.2d 387, 391 [33 Cal. Rptr. 610, 385 P.2d 2].) The intent of the parties herein is clearly expressed in the property settlement agreement; and it appears that the judgment contains a severable and modifiable alimony award based upon the support provisions of the agreement.

The property settlement agreement was drawn by plaintiff's counsel. Contained therein is a provision that the par-

ties desire thereby to make a complete and final settlement of their liabilities, obligations of support, property and rights (Par. 2), and a waiver of all claims and interests against or in the estate of the other left at death (Art. X); but it is silent concerning any statement that the parties intend each provision to be in consideration for each of the other provisions. ■ "The absence in a property settlement agreement of any statement that the support provisions constitute reciprocal consideration for the property provisions is not conclusive if there is other proof of the parties' intent." (*Di Marco* v. *Di Marco*, 60 Cal.2d 387, 391-392 [33 Cal.Rptr. 610, 385 P.2d 2]; see also *Dexter* v. *Dexter*, 42 Cal.2d 36, 41 [265 P.2d 873].) ■ Indeed there is here "other proof of the parties' intent," but such proof is entirely incompatible with any intent that the agreement be an integrated one; it reflects that they intended the support provision to be severable and modifiable. Short of declaring the support provision to be severable and not a part of the property division, we do not see how the draftsman could have more clearly expressed the intent of the parties that the obligation to support the plaintiff was to be subject to future modification. After fixing the monthly sum of alimony to be equal to 35 per cent of defendant's gross income, the parties then expressly declared and agreed that said monthly payments in said amount shall continue until plaintiff remarries, the death of either party, or "until further order of the Court" (Art. II); this language was faithfully carried over into the interlocutory decree of divorce. From this it is clear that neither party intended to restrict future attempts to secure modification. In none of the cases cited by appellant does the support provision of the property settlement agreement or the decree decare that alimony is to continue "until further order of the court."

■ Defendant, in his order to show cause, did not ask to be entirely relieved of paying support to plaintiff - only that the amount be fixed at $300 per month. The court found that defendant remarried in 1958 and is presently contributing to the support of his present wife and her three minor children (Findings of Fact, par. 3); that he is no longer writing on a fee or salary basis, for others, but is engaged in the independent production of industrial films (par. 4); and that in conjunction with his work defendant has heavy business expenses, with great risk of financial loss, and has substantial need for investment capital (par. 5). As to

plaintiff, the court found that she has no one dependent upon her (par. 6); that she has had training and experience as a stenographer and has sufficient good health to become employed (par. 7); and that a sufficient time has elapsed since the divorce herein for plaintiff's readjustment (par. 8). As will hereinafter appear, we have concluded that the evidence supports these findings.

Whether a modification is warranted depends upon the facts and circumstances of each case; and the propriety of modification rests in the sound discretion of the trial court, the exercise of which this court will not disturb unless, as a matter of law, an abuse of discretion is shown. (*Dean* v. *Dean,* 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944]; *Bratnober* v. *Bratnober,* 48 Cal.2d 259, 261-262 [309 P.2d 441]; *Primm* v. *Primm,* 46 Cal.2d 690, 694 [299 P.2d 231].) Any conflicts in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court. (*Primm* v. *Primm,* 46 Cal.2d 690, 693-694 [299 P.2d 231]; *Leupe* v. *Leupe,* 21 Cal.2d 145, 152 [130 P.2d 697].)

From the record it appears that the parties were married in 1934 and separated in 1957; their two daughters, ages 20 and 16, were awarded to plaintiff, but since the decree have married and are no longer living with, or dependent upon, plaintiff. By the property settlement agreement entered into in June 1957, plaintiff was given a 1954 Ford, furniture and furnishings, her personal effects and a life insurance policy; and was awarded, pursuant to the agreement, child support in a sum equal to 5 per cent of defendant's gross monthly income, alimony in a sum equal to 35 per cent of his gross income payable monthly, and one half of the proceeds of the sale of the family home after payments of certain indebtedness.

In 1957 defendant was a writer and producer for a company in Hollywood, working for a salary; further, the record shows nothing concerning the amount of salary received annually, but it did reveal that six or seven years prior to 1957, and in 1957, his income was standard, not fluctuating. While the record fails to show when after 1957 defendant quit working for a salary, it is clear that for some time he has been engaged in his own business as an independent writer and producer in the industrial field making films in the area of public relations. It is a one-man business in which defendant does all of his own work which includes making personal

contacts, selling, entering into contracts, research, writing and producing motion pictures. Defendant's business is partly creative and partly mechanical; due to lack of funds he is unable to hire anyone to help him. He testified that the share film industry is the basic method of operation, but that with his experience, contacts and ability he should be able, in the normal operation of his business, to hire some help, put money into the company and manage it—that this is where he needs funds. He has been able to hire no one except a part-time girl, and does everything himself—even running his own errands. Because of this he has difficulty trying to make personal contacts, sell, write, produce and do research, all at the same time; and working on a flat contract basis there is risk of loss, because if he doesn't bring in the picture at a profit he loses money. Defendant is steadily going in the hole because of heavy expenses and inability, because of lack of help, to make the personal contacts necessary to bring in business. In 1960, his gross income was $18,506.18; in 1961, $21,441.19 and in 1962, $14,400; income for the first four months of 1963 was approximately the same as for the first four months of 1962. He testified that the reason for the decrease in income is that it is a fluctuating business, there has been a reduction in missile activity, which was the prime area of his work, and he has been unable to go out and make necessary sales calls. His business, depending upon personal contacts involves travel, for the work is not now basically available locally in this field. In 1962 defendant inherited $35,000 or $36,000. He spent a large portion of this to take care of personal expenses, debts and current expenses and invested approximately $6,000 in his business. This $6,000 was used mostly to pay up certain indebtednesses. He has between $17,000 and $18,000 left. Defendant married his present wife in October 1958; she has three children aged 19 and 15 (twins). Their father contributes $70 per month for their support; since he is out of the jurisdiction no increase has been sought. While defendant's wife is able to work, she has not worked outside of the home since her marriage, although she helps defendant in his business; defendant supports her and contributes to the support of her three children and his monthly expenses are approximately $1,394 a month. Defendant needs surgery for a serious hemorrhoidal condition. He keeps stalling the operation because he has been told that due to his age he will be out of work for approximately four weeks. His wife received $3,300 from her father's estate out of

which she purchased a mountain cabin on which she is making payments monthly which she takes out of the children's support payments.

Plaintiff's situation has also changed since the interlocutory decree in 1957. The family home was sold for $26,000 and she received a portion of the proceeds from the sale. In 1960 she purchased a tract home for $15,950 for which she pays $108 a month, and in which she lives. In addition she purchased a 1962 Chevrolet. She lives alone and lists expenses which include, among others, repairs, insurance, a gardner at $35 a month, a scrub woman at $52 a month, laundry at $20 a month, food at $140 a month, contributions, entertainment, incidentals, et cetera; and states she is trying to build up a little trust fund for herself and her grandchildren. She totaled her expenses at $743 a month. She has approximately $5,000 in a savings account and around $100 in a checking account. Plaintiff, now 57, was employed in 1934 as a stenographer but has not worked since, nor has she, since 1957, made any effort to become employed. She has no one dependent upon her. She attended Valley Junior College but took an evening course in Spanish. She says her shorthand speed is poor because she has not used it for so many years, but the record shows she has made no effort to study shorthand again. Plaintiff testified that she is an asthmatic and has trouble breathing, heart palpitations and had a kidney operation in 1947. While detailing her ills, she mentioned several doctors' reports but failed to offer in evidence any of these reports or any medical testimony to support her claims. When asked if she was able to work she said, "No," because she would have to use the bathroom too often, her shorthand speed is poor, and she cannot use the typewriter because of a cut tendon in her finger. Then asked if she could be a receptionist she stated: "Not with my kidney problem. I have to visit the ladies' room too often." She denied she had a problem with excessive drinking but admitted she "drank beer to relax and to calm my nerves as a sedative to sleep." Counsel for defendant advised her that during the lunch recess he learned that a lawyer across the street (naming him) was looking for a receptionist and asked her if she would be interested in applying for the job. She stated: "No . . . , if I was going to be a receptionist I would help my daughters out with the grandchildren. They need my help ... If I am going to give anybody help, I am going to give them help."

It is significant that, although plaintiff claims she is physically unable to work, she has offered therefor no medical support of any kind; and that she is wholly unwilling to work outside of her home and, when faced with an immediate job possibility, declined stating, not that she was physically unable to work, but that she was not interested and if she was going to work for anyone it would be for her two daughters.

The evidence clearly justifies the trial court's determination that in the six years between the interlocutory decree and the modification hearing the financial circumstances and obligations of the defendant have worsened while plaintiff's situation has improved. His expenses have increased through remarriage, his income has decreased—business expenses are heavy and there is a substantial need for the investment of capital in his business; on the other hand, plaintiff's claims to poor health are unsupported by medical evidence, she has had training as a stenographer and has been an excellent one, she lives alone and has no one dependent upon her, six years have provided her a substantial period for readjustment and plaintiff could, if willing, obtain part-time employment to supplement the support she receives from defendant. The trial judge heard and observed the parties as witnesses and it was for him to determine whether the defendant's need for investment of capital in his business was necessary to maintain his income, and whether the reduction of plaintiff's alimony was warranted. Under the circumstances it is not shown, as a matter of law, that the trial court abused its discretion.

■ While defendant's remarriage does not alone constitute a substantially changed condition to warrant a reduction of alimony, it appears from the record that this was but one of the several factors considered by the trial court. It is a circumstance that may be considered, with others, in determining the issue. (*Reed* v. *Reed,* 128 Cal.App.2d 786, 792 [276 P.2d 36].) As to the investment of capital in defendant's business, it is clear that it is not ''a new business enterprise'' or one he hopes to get into, but one that he has been in for some time; he should be entitled to make decisions concerning it, such as the amount of capital to invest in it. It further appears that defendant is gradually going in the hole and that unless he receives financial help in his business he will suffer substantial loss of income; business conditions in his field have become increasingly competitive and necessitate

the expenditure by him of greater energy and funds to keep up his production. (*Dean* v. *Dean*, 59 Cal.2d 655, 658 [31 Cal.Rptr. 64, 31 P.2d 944].) On the record it does not seem unreasonable for the trial court to have concluded that the time had come for plaintiff, who has no one dependent upon her and who has had time in which to rehabilitate herself, to apply herself that she might earn at least a part of her income through her own efforts.

For the foregoing reasons the order is affirmed.

Wood, P. J., and Fourt, J., concurred.