[Civ. No. 22165. Second Dist., Div. Two. May 22, 1957.]

DOROTHY KELLEY, Appellant, v. HOWARD KELLEY, Respondent.

230

Leslie & Bernson for Appellant.

Epman & Friedman for Respondent.

ASHBURN, J.—Wife's appeal from order reducing amount of monthly payments to be made to her by husband pursuant to property settlement agreement and decree of divorce. She claims the provision for such payments was an integral part of the property settlement and hence not subject to modification. Husband claims they are alimony payments and subject to alteration when circumstances change. The court upheld this latter contention and made a minute order reducing the agreed amount of $350 to $275 per month.

Plaintiff's complaint, based on extreme cruelty, alleged that: "All community property has been disposed of pursuant to the terms of a property settlement agreement between the parties dated February 14, 1955," and prayed *inter. alia* "[t]hat the property settlement agreement entered into by the parties be approved by this court and that this court make its order binding the parties hereto in accordance with the terms and provisions of said property settlement agreement, and that said property settlement agreement be incor-

porated in the decree of divorce.'' Default decree of divorce was granted to her on February 18, 1955, containing this language: ''It Is Further Adjudged that the property settlement agreement made and entered into between the plaintiff and the defendant, Howard Kelley, on the 15th day of February, 1955 be and the same is hereby approved. Pursuant thereto, it is ordered, adjudged and decreed as follows: 1. That the defendant shall pay to the plaintiff commencing as of February 16, 1955, and continuing thereafter so long as the plaintiff is living and remains unmarried, the sum of Three Hundred Fifty Dollars ($350.00) per month which shall be paid in installments of One Hundred Seventy Five Dollars ($175.00) each on the 16th and 1st day of each and every month thereafter. 2. That the defendant shall pay all premiums now due or hereafter to become due on certain policies of insurance . . .; that the defendant shall retain the plaintiff as the sole beneficiary of said policies of insurance and shall not change the same except in the event of plaintiff's death or remarriage. . . .''

The agreement thus incorporated into the decree by reference (a method now recognized as proper and effective; *Flynn* v. *Flynn,* 42 Cal.2d 55, 59 [265 P.2d 865]; *Foust* v. *Foust,* 47 Cal.2d 121, 123-124 [302 P.2d 11]) declares in Article One, subdivision (e): ''The parties desire to arrange by this agreement for the division of all of their property, and for the making of periodic payments by Husband to Wife in discharge of his legal obligation to support and maintain Wife because of their marital relationship.'' The instrument then proceeds to handle the two subjects separately, the matter of support in Article Three and the division of property in Article Four.

Article Three starts with the declaration: ''Husband and Wife in discharge of Husband's obligation to support and maintain Wife, and because of their marital relationship, hereby agree as provided in this Article Three.'' Subdivision (a) provides for incorporation of the agreement in any divorce decree, ''and this agreement and particularly this Article Three hereof shall be deemed incident to such divorce.'' Subparagraph (b) says: ''In addition to any and all other sums herein provided for to be paid by the Husband to the Wife, the Husband agrees to pay to the Wife, commencing as of February 16, 1955, and continuing thereafter so long as the Wife is living and remains unmarried, the sum of Three Hundred Fifty Dollars ($350.00) per month, which shall be

paid in installments of One Hundred Seventy Five Dollars ($175.00) each on the 16th and 1st day of each and every month hereafter.'' That ends Article Three.

Article Four says: ''Husband and Wife, in discharge of their obligations, each to the other in connection with their respective property interests in any and all property of every kind and nature whatsoever accumulated by them, or either of them, during their marriage, hereby agree as provided in this Article Four. (a) As an additional consideration for the payment by Husband to Wife of the sum or sums specifically provided for in this Article Four, the Wife does hereby renounce, relinquish, waive and forever discharge all of her rights, except as specifically in this agreement otherwise provided, in and to any and all community property of the parties. (b) The Husband agrees to pay to Wife at or before the execution of this agreement the sum of One Hundred Seventy Five Dollars ($175.00).'' Then follow provisions (subparagraphs (c) to (k)) dividing the property, apparently community in nature.

Article Five pursues the same subject. It provides with respect to certain policies of insurance on the husband's life that the wife shall remain the sole beneficiary and the husband shall have no power to change the beneficiary ''except in the event of wife's death or remarriage.''

Article Eleven: ''Except as herein to the contrary provided, the parties shall and do hereby mutually remise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever, both in law and in equity, which either of them ever had, now has, or may hereafter have against the other, upon or by reason of any matter, cause or thing up to the date of the execution of this Agreement, it being the intention of the parties that henceforth there shall be, as between them, only such right and obligations as are specifically provided in this Agreement.''

Article Twelve provides that the agreement shall operate as a renouncement and relinquishment of widow's allowance or ''to participate in the division or sharing of the estate of such deceased party, except as a creditor under this Agreement, and the estate of such deceased party shall descend to the heirs at law of such deceased party, or to his or her devisees or legatees in the manner as though the parties hereto had never married.''

The controlling question of severability of provisions con-

cerning support of the wife and division of property has been the subject of frequent discussion in the courts of review of this state. It is settled that there is no power to modify in instances where the provisions are not severable, being but parts of an integrated agreement covering adjustment of property rights; but if they are severable the court may modify the support provisions upon a showing of changed conditions just as if they were found in a decree rendered without the aid of any underlying agreement. (*Dexter* v. *Dexter*, 42 Cal.2d 36, 40 [265 P.2d 873]; *Fox* v. *Fox*, 42 Cal. 2d 49, 52 [265 P.2d 881]; *Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 60-61; *Finnegan* v. *Finnegan,* 42 Cal.2d 762, 764 [269 P.2d 873]; *Messenger* v. *Messenger,* 46 Cal.2d 619, 624 [297 P.2d 988]; *Anderson* v. *Mart,* 47 Cal.2d 274, 279 [303 P.2d 539]; *Herda* v. *Herda,* 48 Cal.2d 228, 232 [308 P.2d 705]; *Bradley* v. *Superior Court,* 48 Cal.2d 509, 518 [310 P.2d 634].) The situation is not altered by incorporation of the agreement into a decree of court or by the merger resulting therefrom. (*Adams* v. *Adams,* 29 Cal.2d 621, 624-625 [177 P.2d 265]; *Codorniz* v. *Codorniz,* 34 Cal.2d 811, 814 [215 P.2d 32]; *Messenger* v. *Messenger, supra,* at 624.) The court looks through the decree to the agreement and determines the rights of the parties in this respect just as if there were no merger.

 There is no inflexible standard for measurement of the intent of the parties; the question is the same as in the interpretation of any other agreement,—an ascertainment of the intention of the parties as expressed through the language adopted by them. The document is to be viewed from and within its four corners and where, as here, there is no extrinsic evidence the question of its meaning is one of law. (*Fox* v. *Fox, supra,* 42 Cal.2d 49, 52; *Messenger* v. *Messenger, supra,* 46 Cal.2d 619, 626; *Bradley* v. *Superior Court, supra,* 48 Cal.2d 509, 516.) "No single factor can be relied upon in any given case to determine whether monthly payments are in the nature of property or alimony. The agreement must be taken as a whole and consideration given as to the circumstances under which it was made and the nature and value of the property being divided and its relation to the amount of the periodic payments." (*Pearman* v. *Pearman,* 104 Cal.App.2d 250, 253 [231 P.2d 101].) While the labels used by the parties are not controlling (*Fox* v. *Fox, supra,* at pages 52-53; *Messenger* v. *Messenger, supra,* at page 625), they are entitled to consideration as indicative of the actual intention. (*Pearman* v. *Pearman, supra,* at page 253;

*Weedon* v. *Weedon,* 92 Cal.App.2d 367, 369 [207 P.2d 78];
*Fields* v. *Fields,* 94 Cal.App.2d 56, 59 [209 P.2d 977].)

■■ One of the considerations emphasized in cases finding an integration of property and support provisions is the receipt by the wife of a heavy preponderance of the community property and a resulting implication of intention to relinquish or reduce her right of support in consideration of the disproportionate amount of property received by her. (See *Adams* v. *Adams, supra,* 29 Cal.2d 621, 625; *Helvern* v. *Helvern,* 139 Cal.App.2d 819, 830 [294 P.2d 482].) An analysis of the agreement at bar discloses no such intention, express or implied.

In the first place, it cannot be ascertained from the agreement (and there is no other evidence) what the relative values of properties received by the respective spouses were. On the face of the agreement it looks like the wife had received the more valuable properties but there is not sufficient basis for a definite conclusion upon the matter. This is a cruelty case and the court cannot know whether the wife received more than the trial judge would have awarded without an agreement, or whether the parties thought that such might be the case. More importantly, however, Article Four contains affirmative evidence that such was not the intent. It requires the husband to pay the wife at or before execution of the agreement the sum of $175. The wife, as "an additional consideration for the payment by Husband to Wife of the sum or sums specifically provided for in this Article Four," waives and relinquishes all her rights "in and to any and all community property of the parties." Plainly, the wife's acceptance of the property division provided by Article Four and her waiver of any other property rights was made in consideration of the specified payment of $175 and not any implied disproportion in that property division. This waiver is found in the article dividing the property and it extends only to property and not to right of support. The article *ex industria* declares that its scope is property, the "discharge of their obligations, each to the other in connection with their respective property interests."

In contrast, Article Three expressly declares that the obligations thereby imposed upon the husband are "in discharge of Husband's obligation to support and maintain Wife." This emphasizes the introductory declaration of purpose (Article One (e)) to arrange by agreement "for the division of all of their property," and "for the making of periodic payments

by Husband to Wife in discharge of his legal obligation to support and maintain Wife because of their marital relationship,''—not in discharge of any property arrangement or agreement; the marital obligation is declared to be a living, surviving thing.

Article Three treats of no other subject. ██ It specifies that the $350 monthly payments shall be made ''in addition to any and all other sums herein provided for to be paid by the Husband to the Wife.'' These payments are to be made ''so long as the Wife is living and remains unmarried''; this language is characteristic of an alimony award (see *Pearman* v. *Pearman, supra,* 104 Cal.App.2d 250, 254). This is likewise true of a provision for termination of payments upon the death or remarriage of the wife (*Pearman* v. *Pearman, supra,* at p. 254; *Fields* v. *Fields, supra,* 94 Cal.App.2d 56, 59; *Weedon* v. *Weedon, supra,* 92 Cal.App.2d 367, 369).

██ The fact that the insurance obligation of Article Five terminates upon the wife's death or remarriage also evidences an intention that the husband's obligation to protect and support her shall not extend beyond the period during which alimony normally extends. (*Pearman* v. *Pearman, supra,* at 255.)

Perhaps the intention of the parties would have been clarified by a declaration that the support provision is severable from the property division and not a part of the same. Short of that it is difficult to see how the draftsman could have expressed more clearly the intention that the obligation of the husband to support the wife should survive, not as part of a property division but ''in discharge of his legal obligation to support and maintain Wife because of their marital relationship.''

We hold that the provision of the agreement and the decree for payment of $350 a month to the wife is one for alimony, is severable from the division of property rights, and hence was subject to modification by the court upon a showing of changed circumstances.

██ The evidence is sufficient to support that implied finding of the trial court. At the time of the decree defendant was general agent for Continental Assurance Company and was receiving a salary of $633 per month. He also had an expense account of $818 per month. The salary remained the same down to the time of the modification hearing but the expense account was reduced to $686 in October, 1955, and to $554 in January, 1956. Out of this allowance he paid the

cost of running his office which was always in excess of $554 a month, in excess of $686 since October, 1955, and in January, 1956, was $779.18. His other earnings from the time of divorce to the time of modification aggregated $1,933.30, an average of $193 a month. His personal expenses as well as his salary have remained stationary. Though he had paid all installments of alimony prior to the hearing he had borrowed $1,500 from his mother and had not repaid any part of it. These figures seem to spell a total income of $1,644 per month at the time of the decree and an outgo of not less than $904, including alimony. The difference is $740 a month without reference to his living expenses. By the time of the hearing the income was down to $1,380 and the outgo up to $1,129, in addition to living expenses. The difference is $251 from which the last mentioned item must come. Defendant testified that his business expense exceeded his income by $200 for the last month before the hearing. Another important factor developed at the hearing; his contract as general agent was to be cancelled as of April 1, 1956. This bald fact appears in the record without objection or motion to strike, although other evidence on the same subject had been stricken previously.

The wife testified that her expenses were about the same at the time of the hearing as when the judgment was rendered, namely, $450 per month. She had qualified herself as a real estate agent and was working as a saleswoman, but her net income therefrom was practically nothing. She also testified that she was then in need of surgery.

The court was confronted with the familiar divorce court problem of cutting the pattern to fit the cloth. This the judge did in resolving a question of fact. We find that the evidence was sufficient to support his implied finding of fact and that there was no abuse of discretion.

Order affirmed.

Moore, P. J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied June 13, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 16, 1957. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.