[Civ. No. 9928.   Third Dist.   Dec. 21, 1960.]

JOHN D. WASHBURN, Respondent, v. ANITA M. WASHBURN, Appellant.

Mayes & Ellery and John W. Ellery for Appellant.

Richard C. Dinkelspiel, Kathryn Gabrels, Isabella Grant, John B. McDonald, William J. Thorburn and Roy A. Sharff as Amici Curiae on behalf of appellant.

C. Ray Robinson and Charles E. Goff for Respondent.

WARNE, J. pro tem.*—Respondent (husband) commenced this action for divorce and the appellant (wife) answered and by way of cross-complaint also sought a divorce. While the action was pending, the parties executed a property settlement agreement whereby they undertook to settle their own property rights and in addition their outstanding obligations. Provision was made for the care, support and maintenance of their minor children. The agreement also provided that the husband pay $250 each month to the wife for her support and maintenance. Thereafter the wife obtained an uncontested interlocutory decree of divorce. The trial court found that the property settlement agreement was fair and equitable and that the $250 per month was a reasonable sum for respondent to pay to his wife for her support and maintenance. The interlocutory decree, among other things, provided that respondent pay to appellant the sum of $250 per month for her support and maintenance until the further order of the court. The property settlement agreement was confirmed and approved and was made a part of the interlocutory decree by reference. A final decree of divorce was entered on August 5, 1959.

On July 8, 1959, before the entry of the final decree, respondent secured an order directing appellant to show cause why the interlocutory decree should not be modified to provide that respondent pay appellant for her support and maintenance the sum of $100 instead of the monthly $250 provided in the interlocutory decree.

This order was heard on July 30 and on August 17, 1959. On October 8, 1959, the trial court made and entered its order whereby the interlocutory decree of divorce was modi-

---

*Assigned by Chairman of Judicial Council.

fied so as to reduce the monthly payments required of respondent to the sum of $150. The order provided that it was effective as of August 31, 1959. From this order the appellant has appealed.

Appellant first contends that the effect of incorporation of the agreement in the decree precluded its subsequent modification contrary to the provisions of the property settlement agreement, since the subject agreement does not permit reduction of the amount of monthly payments to appellant below $250 per month; and, second, that the court erred in making its order retroactive. i.e., effective as of August 31, 1959.

In *Kelley* v. *Kelley*, 151 Cal.App.2d 228, 233 [311 P.2d 90], the court said: ". . . It is settled that there is no power to modify in instances where the provisions are not severable, being but parts of an integrated agreement covering adjustment of property rights; but if they are severable the court may modify the support provisions upon a showing of changed conditions just as if they were found in a decree rendered without the aid of any underlying agreement. [Citing several cases.] The situation is not altered by incorporation of the agreement into a decree of court or by the merger resulting therefrom. [Citing cases.] The court looks through the decree to the agreement and determines the rights of the parties in this respect just as if there were no merger.

"There is no inflexible standard for measurement of the intent of the parties; the question is the same as in the interpretation of any other agreement,—an ascertainment of the intention of the parties as expressed through the language adopted by them. The document is to be viewed from and within its four corners and where, as here, there is no extrinsic evidence the question of its meaning is one of law. [Citing cases.] 'No single factor can be relied upon in any given case to determine whether monthly payments are in the nature of property or alimony. The agreement must be taken as a whole and consideration given as to the circumstances under which it was made and the nature and value of the property being divided and its relation to the amount of the periodic payments.' (*Pearman* v. *Pearman*, 104 Cal.App. 2d 250, 253 [231 P.2d 101].) While the labels used by the parties are not controlling [citing cases], they are entitled to consideration as indicative of the actual intention. [Citing cases.]"

The court said in *Fox* v. *Fox*, 42 Cal.2d 49, 52 [269 P.2d 881] : "In the absence of conflicting extrinsic evidence,

the interpretation placed upon the agreement by the trial court is not binding on this court on appeal.''

However, it was stated in *Teater* v. *Good Hope Dev. Corp.*, 14 Cal.2d 196, 210 [93 P.2d 112] : '' '. . . When the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of a party, appellate courts will not substitute another interpretation though it seems equally tenable.' ''

■■ On the issue as outlined above the appellant points to the opening recital of the agreement which expressed the parties' wish and desire that ''a full and final adjustment of all their property rights, interests, and claims be had. . . .'' There is similar language at the end of the agreement. This language in itself lends no convincing weight to appellant's contention that the support payments were bound to the property provisions and thus were not modifiable.

■■ Appellant also points to the concluding provision of Paragraph 11 of the agreement. Paragraph 11 concerns the wife's support payments and in conclusion provides that the payments to the wife at a rate of $250 each month ''shall continue *without reduction* until such time as the wife may remarry. . . .'' (Italics added.) Under this provision it might be inferred that the payments were intended to be integrated completely with the property division provisions. On the other hand, the payments will end upon the wife's remarriage which would raise an inference that the payments are in the nature of alimony. Also relevant is appellant's contention that this clause, while prohibiting reduction of payments, allows an increase of payments. This would also lead to the conclusion that alimony was intended and that the payments might be modified under the provisions of Civil Code, section 139, which gives the court such power.

We are of the opinion that the agreement itself clearly disposes of the issue. Paragraph 8 of the agreement provides for a detailed division of the community property and adjusted the rights with respect to the insurance policies, without any reference to support payments. ■■ Paragraph 11 is entitled ''Wife Support,'' and while the label used by the parties as hereinabove noted is not controlling, it is entitled, nevertheless, to consideration as indicative of the actual intent of the parties. (*Kelley* v. *Kelley, supra.*) ■■ Paragraph 11 in its entirety reads as follows :

''The husband hereby promises and agrees to pay to the wife, as and for her support and maintenance, the sum of Two

Hundred and Fifty Dollars ($250.00) each month, commencing with the first day of August, 1958, and due and payable on the first day of each month thereafter, it being expressly understood and agreed by the parties hereto that this provision for the wife's support and maintenance is not to be construed or interpreted as payment and/or satisfaction of the wife's right in and to any and all of the community property of the parties hereto, but, rather, that this provision for the wife's support and maintenance is separate and distinct from any division of the community property of the parties, and that the provision herein contained shall continue without reduction until such time as the wife may remarry, should the marriage of the parties hereto be dissolved.''

By an addendum to the agreement it is provided: ''It is further understood and agreed . . . that the support payments, both child support and *alimony*, were arrived at in consideration of the husband's income being based upon the income reported for the calendar year 1957. . . .'' (Italics added.)

It is to be noted that there is no statement in the agreement that the amount of the support allowance was in consideration of the husband having received a greater portion of the community property than he otherwise would have. As stated in *Kelley* v. *Kelley, supra,* at page 235: ''Perhaps the intention of the parties would have been clarified by a declaration that the support provision is severable from the property division and not a part of the same. Short of that it is difficult to see how the draftsman could have expressed more clearly the intention that the obligation of the husband to support the wife should survive, not as part of a property division but 'in discharge of his legal obligation to support and maintain Wife because of their marital relationship.' ''

The language of Paragraph 11 clearly expresses the parties' intent that the support provisions were severable from the property distribution. Accordingly, these payments were in the nature of alimony and were subject to modification by the court under the provisions of section 139 of the Civil Code. The parties agree that the circumstances changed sufficiently to allow the trial court to properly modify the support provision of the interlocutory decree providing the contract provisions for settlement of property rights and the provision for support of the wife were severable.

Appellant's final contention is that as the final order was entered October 8, 1959, ordering the reduction in alimony

to be effective August 31, 1959, that this amounted to a retroactive reduction, contrary to law. Appellant cites *Anderson* v. *Anderson,* 129 Cal.App.2d 403 [276 P.2d 862], but in that case the trial court considered a motion for modification of alimony in 1953 and reduced defendant's duty to pay effective in 1950. In this case the motion was heard and the trial court directed the order to be prepared August 25, 1959.      It is clear that a final judgment could have been entered before August 31, 1959. Where a decree *nunc pro tunc* is entered in such a case, it is proper if the delay was through no fault of the parties. (*Leavitt* v. *Gibson,* 3 Cal.2d 90 [43 P.2d 1091].) It appears that the trial judge left on vacation without notifying counsel; thus the delay was not respondent's fault. These facts are not to be found in the record but are unrefuted and it will be presumed that the trial court acted properly. The fact that the trial judge left on vacation is to be found in the parties' briefs.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1961.