[Civ. No. 22884. First Dist., Div. One. Oct. 4, 1966.]

MARJORIE LEVY, Plaintiff and Appellant, v. JULIAN LEVY, Defendant and Respondent.

Martin J. O'Malley and Arthur N. Ziegler for Plaintiff and Appellant.

Ollie M. Marie-Victoire and Jacob L. Karesh for Defendant and Respondent.

SIMS, J.—Plaintiff wife has appealed from several orders made in proceedings which were instigated by defendant husband in which he secured an order relieving him from an obligation of making monthly payments for the support, care and maintenance of plaintiff, an order requiring her to contribute to the cost of the care, maintenance and support of their minor incompetent son, and an order declaring that defendant was not in default under the terms of the decree of divorce theretofore entered in the action.

Plaintiff asserts that the provisions for her support were not modifiable because they are contained in an integrated property settlement agreement which was approved by the court and made a part of the interlocutory decree, and that in any event the order relieving defendant of the obligation to make the payments was premature and unsupported by the evidence. She further contends that the trial court erred in ordering her to contribute to the support of their incompetent son because the defendant father failed to establish that he was unable to support the child or that there had been any adverse change in his circumstances, and because the order itself is uncertain and unauthorized in form.

Collateral matters presented are the scope of the appeal and the reviewability of the order which deprived plaintiff of the support payments, and a determination of whether the jurisdiction of the divorce court over the support payments terminated when the son attained his majority April 21, 1965.

For the reasons hereinafter set forth it is concluded that the trial court erred in purporting to modify the provisions contained in the agreement and decree for the support of the wife and in declaring that defendant was not in default under the terms of the divorce decree; that the trial court acted properly in entertaining the question of the relative obligation of each parent to contribute to the support of the son during his minority; and that the order is erroneous insofar as it purports to fix the obligations of the parents after the child attained his majority. Because the first error affects the entire proceedings all orders must be reversed. The scope of the appeal is reviewed in connection with the procedural history.

On November 3, 1950 plaintiff filed her complaint for divorce which included allegations that the parties had entered into a property settlement agreement and that the defendant was able to provide reasonable support and maintenance for the plaintiff and for the two minor children of the parties. Included in the prayer were separate requests for a

reasonable sum for the maintenance and support of the children and plaintiff and for an award of the community property in accordance with the terms of the property settlement agreement.

According to the recitals of the interlocutory decree the case came on as a default matter on November 16, 1950. The decree awarded plaintiff the care, custody and control of the minor children with visitation rights to defendant. He was ordered to pay the sum of $100 per month for each of the children and $1,175 per month for the support, care and maintenance of plaintiff for a period of one year commencing November 1, 1950, and thereafter the sum of $175 per month commencing November 1, 1951. The payments are to terminate in the event of plaintiff's remarriage, but are chargeable against the estate of the defendant in the event of his death. These terms follow the provisions contained in the property settlement agreement which was ratified, confirmed and approved and was expressly made a part of the decree by the incorporation of an attached copy. A final decree signed and filed November 20, 1951 embodies the same terms as the interlocutory decree.

Bruce, the younger son, is mentally disturbed and from about the time of the divorce until 1960 he was maintained at the Devereaux School in Santa Barbara. The defendant further paid for his support at the rate of $500 per month. In 1960 the father remarried and attempted to set up a household with his new wife and Bruce in San Francisco. On February 6, 1961, pursuant to a stipulation between the parties, the provisions for custody and support of the children in the final decree of divorce were stricken. The elder son attained his majority January 8, 1960, and a new provision referring only to the younger son was substituted, which reads: "the defendant shall have the care, custody and control of the minor child of the parties, to wit; BRUCE LEVY, it being understood however that the legal custody of said child shall be in the plaintiff and the defendant; . . ." It further provided for visitation rights in plaintiff.

The youth proved uncontrollable. The defendant's second marriage terminated after five or six months. Bruce was sent to Napa State Hospital, and subsequently placed in a private care home where he was being maintained by the defendant at a cost of over $500 per month at the commencement of the present proceedings.

On September 16, 1964 defendant served and filed his notice of a motion for an order terminating alimony and for an order

for plaintiff to contribute to the support of the minor child. It was accompanied by points and autorities and the declaration of defendant, in which he set forth the provisions for support of plaintiff as set forth in the interlocutory decree. He alleged therein that his income, earning power and assets had materially decreased; that he was spending $600 more or less a month for the support and maintenance of Bruce, the ''minor son of the parties, twenty (20) years of age''; that plaintiff was not contributing to the support of the minor son although she was well able to do so; and that he had fully complied with the terms of the decree of divorce and was not in default under any of its terms.

Plaintiff countered with a motion to dismiss defendant's motion for lack of jurisdiction because the order for the support of plaintiff was based upon an integrated property settlement agreement which is not subject to modification and she filed points and authorities in support of that position. In her declaration plaintiff referred to the provisions of the agreement and of the interlocutory and final decrees, and further alleged that commencing with the month of October 1961 deficiencies which had accumulated in the $175 per month payments to her aggregated $1,312.50 through October 1964. At the hearing on October 29, 1964 plaintiff offered another declaration in which she asserted that arrearages of $2,625 had accrued in connection with the total payments for the support of herself and the elder son in the years 1956 through 1959.

On November 3, 1964 the court rendered its minute order reading as follows: ''Property Settlement Agreement is not integrated so as to forbid modification by a trial court. Motion for orders terminating alimony payments to plaintiff granted, and motion for order requiring plaintiff to contribute to support of minor child granted.'' On November 12, 1964 a formal order was signed and filed embodying similar terms.[1]

On November 16, 1964 plaintiff filed a notice of appeal from both the minute order, and the formal written order. On

---

[1]The order recites: ''It Is Ordered that the monthly payment of $175.00 to plaintiff, which defendant was ordered to pay for plaintiff's support and maintenance pursuant to the final decree of divorce herein, is hereby terminated.

''It Is Further Ordered that plaintiff shall be required to contribute toward the support of the minor child of the parties, Bruce Levy. The amount of such support to be contributed by plaintiff, and the time and manner of payment by her, are to be determined by this court after further hearings on November 20 and 23, 1964, or on such date as is convenient to the court and the respective parties.''

December 7, 1964 that appeal was dismissed by this court on defendant's motion which was interposed on the grounds that the orders appealed from were not final but merely interlocutory and that the appeal was premature. (1 Civ. 22464.)

The present notice of appeal was filed on March 15, 1965. This notice is not timely as a direct attack on the foregoing orders (Cal. Rules of Court, rule 2(a)) and the purported appeals from the November minute order and formal order must be dismissed. ██ The portion of the orders which reserved the question of plaintiff's obligation to contribute to the support of her son was clearly interlocutory. It is incorporated in the final order signed and filed March 3, 1965 and may be reviewed therewith. ██ That portion of the orders which terminated defendant's obligation to furnish support and maintenance to plaintiff was not incorporated in the March order. It is, however, an essential predicate of that order. In view of the disposition of the prior appeal in this case it should be and will be treated as an interlocutory order which is subject to review in connection with the March order. (See Code Civ. Proc., § 956.)

A hearing on November 23, 1964 resulted only in legal argument in regard to the jurisdiction of the court to proceed on the issue of child support in view of plaintiff's first appeal which was then pending. The proceedings reflect that the parties had in the interim appeared before a court referee who had indicated that defendant's payments to plaintiff to November 1, 1964 were $3,687 less than the amounts called for by the original decrees.

On January 14 and 28, 1965 testimony was given as to the financial status of each of the parties and the cost of the support and maintenance of Bruce, and the matter was submitted.

██ On February 1, 1965 the court made its minute order that plaintiff should contribute one-half of the support and maintenance of Bruce. The following day a second minute order amended the first to add "Defendant to prepare Findings of Fact and Conclusions of Law." Thereafter on March 2, 1965 findings of fact and conclusions of law were signed and filed, and on March 3, 1965 a formal written order was signed and filed.[2] Plaintiff has attempted to appeal from each of those orders. The order of February 1, 1965 is deemed superseded by the amended order of February 2, 1965. The latter

[2]This order provides: "It Is Ordered That 1. Defendant, Julian Levy, shall, on the last day of every month, send to plaintiff an itemized

order expressly directs that a written order be prepared, signed and filed. The purported appeals from the February orders should be dismissed. (See Cal. Rules of Court, rule (2)(b)(2).) The appeal considered is that from the formal written order signed and filed March 3, 1965 and includes within its scope the rulings, proceedings, orders and decisions which led to its effectuation.

### The Order for Modification of the Payments to Plaintiff

The only extrinsic evidence offered in regard to the interpretation of the 1950 property settlement agreement was evidence to show that plaintiff in reliance upon the judgment of her accountant had reported the payments received from defendant as income designated as ''alimony'' on her income tax returns. Defendant's accountant testified that the treatment of the payments depends on the provisions of the agreement as construed in the light of the Internal Revenue Code, and that it was usually necessary to check with the attorney who prepared the agreement. There is nothing significant in this evidence. (See *Clark* v. *Clark* (1961) 198 Cal.App.2d 521, 530-531 [17 Cal.Rptr. 652].)

Defendant concedes that in the absence of conflicting extrinsic evidence, the appellate court must make an independent determination of the meaning of the contract and is not bound by the interpretation placed upon the agreement by the trial judge. (See *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Fox* v. *Fox* (1954) 42 Cal.2d 49, 52 [265 P.2d 881].)

The applicable rules are set forth in *Plumer* v. *Plumer* (1957) 48 Cal.2d 820, at pages 824-825 [313 P.2d 549] wherein the court concluded: ''An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property. Such an agreement would be destroyed by subsequent modification of a support order based thereon, without the consent of the parties. [Citations.] It is immaterial whether or not the

list of that month's expenses incurred by him for the support and maintenance of Bruce Levy.

''2. Upon receipt of such itemized list, plaintiff shall promptly send to defendant her remittance for one-half of the amount shown thereon.

''It Is Further Ordered, Adjudged and Decreed that defendant is not in default under the terms of the decree of divorce entered in this action.''

marital property is divided equally. [Citations.] It is immaterial that the amount of the marital property is small. [Citation.] It is likewise immaterial that the agreement calls for payments for 'support' or 'alimony.' [Citation.]

■ ''A support order based upon an integrated agreement may be modified if the parties so provide. [Citation.] Absent such a provision, it cannot. ■ An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. [Citations.] Even absent one or more of the foregoing provisions, there may be other proof that the parties intended an integrated agreement. [Citation.] ■ Thus, the parties may be uncertain as to the value or legal ownership of property. They may be uncertain which of them is entitled to a divorce and on what grounds and therefore uncertain as to their legal rights with respect to support and the division of property. An agreement for a specified division of property and specified support payments settling such uncertainties is integrated in the absence of convincing proof that the parties intended it to be severable. [Citations.] ''

■ Defendant first contends that the support payments for which provision is made in the interlocutory and final decrees are independent of the agreement because the specific provisions of the decrees relating thereto do not expressly refer to the agreement itself, and because the subsequent provisions relating to the agreement itself do not order each party to carry out its terms. Examination of the interlocutory decree and the attached agreement as a whole reflects that the provisions of the decree are but an echo of the provisions of the agreement. There would be no warrant for including an extra payment of $12,000 at the rate of $1,000 per month during the first year, or in providing that the payments would be a charge against the estate of the defendant unless the parties had so agreed. It must be concluded that the order for support payments was predicated upon the agreement of the parties.

The same considerations apply to the question of the pertinency of the form of the pleading upon which the decrees were predicated. The separate allegations that the defendant was

adequately able to provide reasonable support and maintenance for the plaintiff and for the children, and the separate paragraph of the prayer for such relief are factors tending to show that plaintiff was not relying upon the provisions of the agreement. (See *Pearman* v. *Pearman* (1951) 104 Cal.App.2d 250, 252 [231 P.2d 101].) This inference, however, is dispelled by the actual relief granted in the decree. It is obvious that if she had attempted to disregard the provisions of the agreement and had secured an order for her own support in sums in excess of that provided therein, the defendant would have had just cause for complaint. His assertion that on his default he could expect to be ordered to pay a reasonable modifiable amount instead of that which he stipulated to pay in the agreement is an unwarranted attempt to avoid the bargain which he had made.

Attention is therefore focused on the agreement. The intent of the parties is expressly set forth in the preamble and in paragraphs 15 and 16 thereof. The former expressly provides: "WHEREAS, the parties hereto desire by this agreement to settle their property rights and to likewise provide for the support and maintenance of said minor children and the right of First Party to receive support and maintenance from the said Second Party, . . ." This does not necessarily inform the reader whether the provisions for the settlement of property rights, and the clause dealing with support payments are integrated in the sense "that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration." (*Plumer* v. *Plumer, supra.*) The following clause, however, appears to answer this question. It recites: "Now, THEREFORE, for and in consideration of the foregoing premises and the agreements, covenants and conditions hereinafter contained, the parties hereto have agreed, and by these presents to agree, to wit: . . ."

The form of the agreement does not purport to separate the two subjects. Paragraphs 1 and 17 provide for the custody of the children and paragraph 2 for their support. Paragraph 3 contains the provisions incorporated in the decree.[3] Paragraphs 4 through 10, inclusive, and paragraph 14 set forth the disposition of specific items of property. Paragraph 11

[3]Paragraph 3 recites: "3. Said Second Party agrees to pay to said First Party the sum of $1,175.00 per month for the support, care and maintenance of First Party for a period of one year commencing November 1st, 1950, and thereafter, commencing on November 1st, 1951, the sum of $175.00 per month for the support, care and maintenance of First Party and such payments shall be a charge against the estate of said

requires defendant to indemnify plaintiff for any taxes she might be required to pay because of the payments during the first year. Paragraphs 12 and 13 are reciprocal waivers of "any and all right or claim" which either might have in property thereafter acquired by the other, or as surviving spouse, or administrator in the event of death of the other, or as guardian in the event of the other's disability.

Finally it is recited: "15. It is mutually understood and agreed that this agreement is not made in consideration of either of the parties maintaining or defending any action for divorce that may be brought between the parties; and this agreement is not made in consideration of the consent of either party that a divorce may be obtained. Nothing in this agreement shall prejudice the right of either party to maintain or defend any action for divorce which may be brought between the parties, it being distinctly understood that this agreement is only intended to settle, and does hereby settle, the property rights of the parties hereto, insofar as it is lawful or proper so to do by means of an agreement, and only so far as it settles the right of the First Party to receive alimony or support and maintenance from the Second Party, and to this extent this agreement and the provisions thereof shall be binding upon the respective parties hereto.

"16. It is understood and agreed that if any divorce action is filed concerning the parties hereto, it is mutually agreed that this agreement may be presented to the Court for approval and affirmance and that a copy hereof may be attached to and made a part of any decree."

 The conclusions of *Plumer* are apposite: "Under the foregoing rules the agreement in the present case is clearly integrated. It deals both with rights to marital property and rights to support. The parties have set forth their purpose 'to effect a final and complete settlement of their . . . rights . . . with reference to their marital status and to each other.' They have released each other from all claims arising out of the marital relationship except as provided in the agreement. The inference is clear that the parties intended an integrated agreement. It is not necessary that the parties expressly recite such an intent when the agreement itself makes the intent clear. [Citation.]" (48 Cal.2d 820 at p. 825; see also *DiMarco*

Second Party in case of his death. It is agreed by and between the parties hereto that said payments shall be discontinued and said Second Party shall be discharged from any obligation for support and maintenance of said First Party in the event said First Party should remarry."

v. *DiMarco* (1963) 60 Cal.2d 387, 391-393 [33 Cal.Rptr. 610, 385 P.2d 2]; *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 60-61 [265 P.2d 865]; *Fox* v. *Fox* (1954) 42 Cal.2d 49, 52-53 [265 P.2d 881]; *Dexter* v. *Dexter* (1954) 42 Cal.2d 36, 41-44 [265 P.2d 873]; *Roberts* v. *Roberts* (1966) 241 Cal.App.2d 93, 99-100 [50 Cal.Rptr. 408]; *Biagi* v. *Biagi* (1965) 233 Cal.App.2d 624, 628-633 [43 Cal.Rptr. 707]; *Roberts* v. *Roberts* (1964) 226 Cal.App.2d 507, 511-518 [38 Cal.Rptr. 176]; *Clark* v. *Clark* (1961) 198 Cal.App.2d 521, 526-534 [17 Cal.Rptr. 652]; *Baker* v. *Baker* (1961) 192 Cal.App.2d 730, 733-739 [13 Cal.Rptr. 772]; *Yarus* v. *Yarus* (1960) 178 Cal.App.2d 190, 200-203 [3 Cal.Rptr. 50]; *Newhall* v. *Newhall* (1958) 157 Cal.App.2d 786, 791-793 [321 P.2d 818].)

Defendant seeks to avoid the effect of the foregoing precedents by reference to several aspects of the agreement. He claims that since the original recital is in the conjunctive and since the second purpose was to ''provide for''—not to ''settle''—the plaintiff's right to receive support and maintenance from him, that the respective provisions are severable. (See *Levitt* v. *Levitt* (1965) 62 Cal.2d 477, 481-482 [42 Cal. Rptr. 577, 399 P.2d 33]; *Washburn* v. *Washburn* (1960)187 Cal.App.2d 617, 621-622 [9 Cal.Rptr. 859]; *Kelley* v. *Kelley* (1957) 151 Cal.App.2d 228, 234-235 [311 P.2d 90]; and *Pearman* v. *Pearman, supra,* 104 Cal.App.2d 250, 252; but cf. *Biagi* v. *Biagi, supra,* 233 Cal.App.2d 624, 629 and 632.) This contention overlooks the other provisions quoted above which reflect that the promises and provisions were reciprocal, and expressly refer to the intent to settle the right of plaintiff to receive alimony or support and maintenance from defendant (par. 15). The form of the agreement does not separate the topics but intertwines them (see outline, *supra*).

He further contends that since there is no evidence of a dispute as to the status or division of the property, there could be no reciprocal consideration for the promise to make fixed periodic payments. (See *Kelley* v. *Kelley, supra,* 151 Cal. App.2d 228, 234.) The fact that the parties ultimately agreed does not evince that there was no dispute which was thereby resolved. In any event, it is the resolution of uncertainty not the relative shares received which supports the agreement. (*Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 43; *Newhall* v. *Newhall* (1958) 157 Cal.App.2d 786, 792-793 [321 P.2d 818].)

Defendant correctly points out that in substantially all of the cases in which an integrated, nonmodifiable agreement has been established there was an express recital in which the wife

waived her right to future support or alimony, or to any payments other than as provided in the agreement. There is no such express recital in the instant agreement. The only waivers are those which are prospective in operation: first, in regard to property that might thereafter be acquired by either party, and secondly, in regard to rights which might otherwise arise on the death of one of the parties. The draftsman apparently assumed that it would be redundant to include an express waiver of rights in the property then in being which was expressly allocated by the agreement. Similarly there was no reason to include an express waiver of ''the right of [plaintiff] to receive alimony or support and maintenance'' which the agreement was expressly intended to settle.

The recitals, the amount of the first year's payments, and the provision that the payments should be a charge against the defendant's estate compel the conclusion that the provisions of the agreement are integrated and nonmodifiable. (See *Biagi* v. *Biagi, supra,* 233 Cal.App.2d 624, 632-633; *Clark* v. *Clark, supra,* 198 Cal.App.2d 521, 532; *Yarus* v. *Yarus, supra,* 178 Cal.App.2d 190, 200.) The fact that they would terminate upon plaintiff's remarriage or her death prior to that of defendant does not compel a contrary conclusion. (*Dexter* v. *Dexter, supra,* 42 Cal.2d 36, 41-42; *Yarus* v. *Yarus, supra,* 178 Cal.App.2d 190, 201; and cf. *Washburn* v. *Washburn, supra,* 187 Cal.App.2d 617, 621; and *Kelley* v. *Kelley, supra,* 151 Cal.App.2d 228, 235.)

The decision and order of the trial court that the property settlement agreement was not integrated so as to preclude modification, and the order terminating defendant's obligation to make monthly payments according to the agreement and prior decrees, were erroneous and must be set aside. In view of this conclusion it is unnecessary to determine whether the trial court erred in making that order prematurely before the receipt of all evidence to be offered on the point, or whether the modification, if permissible, was based on sufficient evidence.

### *The Order for Contribution to the*
### *Support of the Minor Son*

Defendant's notice of motion was entitled ''Notice of Motion . . . For Order For Contribution By Plaintiff To Support Of Minor Child.'' In the declaration filed September 16, 1964, Bruce was described as ''minor son of the parties, twenty (20) years of age.''

At the time of the entry of the interlocutory decree, November 16, 1950, the power of the superior court to make orders in a divorce action for the support and maintenance of a child of the marriage was set forth in sections 138 and 139 of the Civil Code.[4] Prior to the entry of the final decree the code was revised to provide substantially as currently found in sections 137.1, 137.2 and 139.[5]

The parties have assumed that the divorce court had jurisdiction to consider the question of whether the mother who retained joint legal custody, but who had surrendered physical custody to the father, could be required to contribute to the support of the child. For the purposes of this case it will be

---

[4]Section 138, as amended by Stats. 1905, ch. 49, § 1, p. 43, and Stats. 1931, ch. 930, p. 1928, provided in part: ''In actions for divorce . . . the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same. . . .'' The phrase ''during the minority'' was not in the provisions of similar purport as originally enacted in 1872 and was added by the 1905 revision.

Section 139, as enacted and as amended by Stats. 1933, ch. 412, § 1, p. 1039, provided in part: ''Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage . . . having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects. . . .''

[5]By Stats. 1951, ch. 1700, § 2, p. 3911, section 137.1 was added to the Civil Code, to provide as follows: ''When a father or mother has the duty to provide for the support, maintenance and education of the children of the father and mother and wilfully fails to provide for such support, maintenance and education, the father or mother, as the case may be, or any child by its guardian ad litem, may maintain an action in the superior court against the mother or father, or both, as the case may be, for the support, maintenance and education of said children.''

The state statute deleted the reference to ''care, education, maintenance and support'' from section 138 so that it dealt and deals solely with custody. (Stats. 1951, ch. 1700, § 6, p. 3911.) Section 137.2 was added to provide in part as follows: ''During the pendency of any action for divorce . . . the court may order the . . . father or mother . . . to pay any amount that is necessary . . . for the support, maintenance and education of the children, . . .'' (Id., § 3, p. 3911.)

Section 139 was recast to provide in part as follows: ''In any interlocutory or final decree of divorce . . . the court may compel the party against whom the decree or judgment is granted . . . to make suitable allowance for the support, maintenance and education of the children of said marriage during their minority, . . .

''That portion of the decree . . . making any such allowance . . . and the order or orders of the court to enforce the same may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation.'' (Id., § 7, p. 3912; subsequently amended in other particulars by Stats. 1957, ch. 1837, § 1, p. 3243; Stats. 1959, ch. 1399, § 1, p. 3678; Stats. 1961, ch. 2098, § 1, p. 4362; Stats. 1963, ch. 861, § 1, p. 2097.)

assumed that the trial court had jurisdiction in the matter, at least during the minority of the child, despite the fact that the 1951 amendments, as distinguished from the prior provisions of section 138, make no express provision for compelling in the divorce action the prevailing party to furnish child support after the final hearing. (Cf. former § 138 and present §§ 137.2 and 139.)

In any event the superior court had general jurisdiction to entertain a controversy of the nature of that presented by so much of defendant's motion as sought contribution from plaintiff, and her opposition thereto. The related questions of whether the payments to the wife could be modified and, if so, whether they should be were properly before the court in the divorce action. No reason suggests itself why the court could not properly consider both matters, at least during the minority of the child and in the absence of objection by either party. In *Estate of Baglione* (1966) 65 Cal.2d 192 [53 Cal. Rptr. 139], the court recognized an extension of the power of the superior court exercising probate jurisdiction to consider collateral claims of the parties before it. It stated: "The rationale for this exception is the conservation of time, energy, and money of all concerned. To deny a superior court sitting in probate the power to determine the whole controversy between the parties before it is pointless. In the exercise of its legal and equitable powers (see *Schlyen* v. *Schlyen, supra,* at p. 371 [43 Cal.2d 361 (273 P.2d 897)] ; *Estate of Cover,* 188 Cal. 133, 139 [204 P. 583] ), a superior court sitting in probate that has jurisdiction over one aspect of a claim to certain property can determine all aspects of the claim. A claimant is not required to sever and litigate a multi-faceted claim in separate proceedings once all the necessary parties are before the court." (65 Cal.2d at p. 197; and cf. *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 74-75 [42 Cal.Rptr. 473].) The same reasoning, if applied to this case, supports the exercise of jurisdiction by the trial court on the second phase of defendant's motion.

Plaintiff's attack on the order which provides that she pay one-half of the expenses of the support and maintenance of her minor son is threefold. She first contends that since the defendant was given custody and charged with the support of his son by the 1961 stipulation and order, she, as the mother, cannot be called upon to contribute to the son's support unless it is established that the father with custody is financially unable to provide it.

She relies upon section 196 of the Civil Code which provides: ''The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability.''

The fact that the father has physical custody of the boy undoubtedly makes him primarily liable for the child's support. Where the mother has custody, the father's liability is generally limited to that provided in the proceedings under which the mother was given custody. (*Lewis* v. *Lewis* (1917) 174 Cal. 336, 339 [163 P. 42].) It is equally clear, however, that the father deprived of custody is not thereby relieved of the obligation of support to the extent that it cannot thereafter be enforced under proper circumstances (*id.,* at p. 340). Here the plaintiff retained joint legal custody with the father. Therefore, she is in no position to claim, if she could, that a different rule should apply to a mother deprived of custody.

No precedents are found which specifically define the criteria to determine when the father is or is not able to give adequate support. Plaintiff contends that so long as the father has any resources at all the mother cannot be required to pay. **[14]** It is true that when neither the child nor the mother has any resources the father may be compelled to resort to his capital. (*Bailey* v. *Superior Court* (1932) 215 Cal. 548, 552 [11 P.2d 865]; *Woolams* v. *Woolams* (1952) 115 Cal.App.2d 1, 6 [251 P.2d 392].) That principle does not, however, preclude examination of other resources available to the child either from his own estate or from his mother. In many cases the courts have considered other available resources in determining the extent to which the father should contribute to the support of the child. (See *Chapin* v. *Superior Court* (1966) 239 Cal.App.2d 851, 858 [49 Cal.Rptr. 199]; *McReynolds* v. *McReynolds* (1963) 218 Cal.App.2d 683, 687-688 [32 Cal.Rptr. 462]; *Nicholas* v. *Nicholas* (1952) 110 Cal.App.2d 349, 353 [242 P.2d 679]; *Gilbert* v. *Gilbert* (1950) 98 Cal.App.2d 444, 446 [220 P.2d 573]; *White* v. *White* (1945) 71 Cal.App.2d 390, 392 and 394-395 [163 P.2d 89].) **[15]** ''The trial court has the power to require either father or mother or both to assist in the support of minor children (Civ. Code, § 196), and the community property, quasi-community property, and the separate property may be subjected to the support of children (Civ. Code, § 143).''

(*Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 39 [41 Cal.Rptr. 5, 396 P.2d 37]; and see *Lufkin* v. *Lufkin* (1930) 209 Cal. 710, 714 [290 P. 8]; and *Chapin* v. *Superior Court, supra,* 239 Cal. App.2d 851, 855-856.)

▉ It is concluded that the test under the provisions of section 196 of the Civil Code is not an absolute test dependent upon whether the husband has any resources at all to furnish adequate support for his child, but a relative test in which the legitimate needs of the child must be whittled down or expanded in accordance with resources available from his parents. Their relative contributions in turn must depend on the urgency of the needs of the child and the relative hardship to each parent in contributing to such needs. ▉ The weighing of these variables is a matter which must be committed to the sound discretion of the trial court and should not be upset in the absence of an abuse in the exercise of such discretion. (See *Woolams* v. *Woolams, supra,* 115 Cal.App.2d 1, 6.)

Secondly, plaintiff contends that there was an abuse of discretion in that the defendant failed to show any adverse change of circumstances which would justify a modification of the preexisting stipulation which had left custody and the obligation of support with the father. The trial court made such a finding in its order of November 12, 1964, which was clearly interlocutory on the issue of child support. Plaintiff has contended this order was made on an incomplete showing. Subsequent hearings gave her an opportunity to present further evidence. It was presented and the court found as follows: ''1. The son of the parties, Bruce Levy, now aged 20, is a mentally disturbed person and is in need of specialized care, maintenance and treatment. 2. The present approximate monthly expenses for the care of Bruce Levy are from $650 to $700, but this amount may be more or less in the future. 3. The income and resources of defendant Julian Levy are insufficient to pay all of such expenses. 4. Plaintiff, Marjorie Levy, has the ability to assist the defendant in providing support, maintenance and treatment for Bruce Levy.''

Reference to the record reflects that there may have been no change in the needs of the son; that any improvements in the financial condition of the plaintiff was only by reason of her thrift and industry; and that the husband's assets and income, and, by reason of age, his ability to earn, were materially less than they had been in 1950 and the ensuing years.

A certified audit of the defendant's business prepared at the end of 1951 disclosed that the net worth of the business

was $219,275.49 and that the total profit (including salaries) for him and his partner was $20,511.55.

A noncertified audit at the close of 1963 reflected an unfortunate decline of the once prosperous business: total income before provision for partners' salaries was $7,660.54; the net worth had decreased to $150,752.16; and the value of defendant's interest in the business was $73,507.74, down from the 1951 figure of $109,637.74. His reported partnership income was $2,461.15.

In 1964 the fortunes of the business did not improve. A noncertified audit taken on August 31, 1964 revealed that while sales were firm at $475,639.45, the net income before provision for partners' salaries was $1,861.22. The net worth of the business had slipped slightly from $151,021.77 to $147,703.75, and defendant's share was now worth $71,565.06. He testified that because this book value contains no good will, he could not realize that amount on a sale. Up to October 1964 his income was estimated around $900 to $1,000.

In his questionnaire defendant stated that his present monthly expenses were $1,590. This included his expense for Bruce, support to plaintiff and payment on personal loans. His rent, utilities, food, clothing, laundry, transportation, insurance, and recreation came to $505 per month. Although he shared an apartment with a woman and her daughter he denied that he contributed anything to their support. He was 65 years old and in good health.

Since the divorce plaintiff has apparently worked part time at light bookkeeping and as a dental or medical nurse. After Bruce was taken out of Devereaux School she stopped working because defendant made her a nervous wreck and Bruce, living so close to her home, annoyed the neighbors.

In 1964 she worked at a letter and answering service, but the business was sold and she was out of a job. At the time of the hearings she was not working and could only seek part time employment because she was taking care of her 80-year-old mother who lived with her. Her health was fair, but in the past she had had operations for cancer and was then recovering from a skin ailment and from recent oral surgery. She was 55 years old.

Plaintiff's questionnaire showed that the expenses for rent, utilities, food, clothing, laundry, transportation, medical, insurance, and recreation were $550 per month. At trial, however, it was revealed that she was spending $131 per month for Bruce, and that this consisted of $78 for a techni-

cian who visited Bruce twice a week, and the rest for clothes and outside entertainment when plaintiff took Bruce out. She agreed that her monthly expenses were around $640. She was then renting a two-bedroom apartment for $175 per month because her mother, who stayed with her, needed to have an elevator.

Plaintiff had a portfolio of stock that she received upon divorce which was worth $100,345.51 at the time of the hearings. She had cash in the bank amounting to $27,224.71, and a $17,736.56 mortgage from the sale of the family home. She also had a 1957 Ford worth $250. She owed $625 for dental work.

Plaintiff complains that in being ordered to contribute to the support of her son she is being punished for her frugality over the years. ■■■ The court properly considered the present needs of the son, and the relative present ability of the parties to contribute to those needs. It was not required to settle up scores that had accrued over the years. No abuse of discretion is found.

Thirdly, plaintiff contends that the order is void for uncertainty and as an attempted unlawful delegation to defendant of the power to fix the amounts she must pay. ■■■ An order to pay one-half of an ascertainable sum may be upheld. (*Lufkin* v. *Lufkin, supra,* 209 Cal. 710, 714.) It is unnecessary to determine whether the instant order is too uncertain or too broad. For reasons hereinafter set forth the matter should be remanded, and it may be assumed that any new order will be limited by terms which fall within established precedents.

The order is predicated upon the premise that defendant is to be relieved of the obligation to pay, and plaintiff is to be deprived of the right to receive the $175 per month payment. Rather than adjusting this summarily by order of this court, prudence dictates that the lower court be granted an opportunity to reconsider the second phase of defendant's motion in the light of the rulings of this court upholding the $175 payments, and questioning the form of the order; and with consideration of the proper procedure, hereinafter discussed, to order support for an adult dependent child.

### *The Order Relieving Defendant from Default*

■■■ The order of March 5, 1964 (fn. 2) purports to determine that defendant is not in default under the terms of the decree of divorce. This issue was interjected into the case by allegation in defendant's declaration, filed in support of his motion, that he had fully complied with the terms of the

decree and was not in default, and plaintiff's allegations that he was in arrears in payments to her of $1,312.50, and in payments for the support of the son who had attained his majority in the sum of $2,625. As noted, it was suggested that the referee found that the amounts called for by the decree exceeded the payments which defendant actually paid over to plaintiff by the sum of $3,687.

Presumably the allegations were originally addressed to the proposition that the court might refuse to modify the support orders if the defendant were in contempt of court because of a default in making payments. (See *Moore* v. *Moore* (1955) 133 Cal.App.2d 56, 61-62 [283 P.2d 338]; *Triest* v. *Triest* (1944) 67 Cal.App.2d 320, 322-324 [154 P.2d 2]; *MacDonald* v. *Superior Court* (1940) 40 Cal.App.2d 517, 518-519 [104 P.2d 1071].) Under the principles set forth in the foregoing cases and the facts before it the lower court could properly find that defendant was not precluded from seeking relief because of a contemptuous refusal to make the payments required by the original decree.

The question of the sufficiency of the evidence to sustain a finding and adjudication that he was not in default is not so clear. The $175 per month payments to the wife were, as has hereinabove been determined, not subject to modification. The payments for the support of the other child could not be modified retroactively. (Civ. Code, § 139; *Spivey* v. *Furtado* (1966) 242 Cal.App.2d 259, 264 [51 Cal.Rptr. 362].) The record does not reflect that any attempt was made to determine the delinquencies on the merits as distinguished from the question of whether defendant's default was of such nature that his petition should be dismissed. Defendant concedes that he failed to make some payments, but claims substantial compliance with the decree. The record fails to sustain a conclusion that nothing was due under the provisions for the $175 payments. It fails to justify the finding of nondefault for the child support payments, nor was issue properly joined thereon on the question of whether the defendant should be credited with substituted payments made for the education and support of the elder son. (See *Spivey* v. *Furtado, supra,* 242 Cal.App.2d 259, 265-267.)

That part of the order of March 3, 1965 which purports to order that defendant was not then in default is erroneous.

### Further Proceedings

On remand the trial court may properly address itself to a determination of the proper support to be paid by each parent

for the support of Bruce during his minority, in the light of the fixed obligation running from defendant to plaintiff, and, as incidental thereto, to a determination of the amount owing from him to her under the terms of the decrees and orders entered prior to the institution of these proceedings.

The fact that Bruce attained his majority April 21, 1965 poses a further problem.　　Generally the obligation of a parent to provide support for his child terminates when the child attains his majority. (See *Nunes* v. *Nunes, supra*, 62 Cal.2d 33, 39; *Spivey* v. *Furtado, supra*, 242 Cal.App.2d 259, 262.) Where an adult child is incapable of self support the duty may continue or arise. (Civ. Code, § 206;[6] and see *In re Dudley* (1966) 239 Cal.App.2d 401, 409 [48 Cal.Rptr. 790], and cases cited.)

　Where the duty persists or arises after the child attains his majority, the obligation may be enforced by independent action. (*Paxton* v. *Paxton* (1907) 150 Cal. 667, 670-672 [89 P. 1083]; and see *Tuller* v. *Superior Court* (1932) 215 Cal. 352, 355 [10 P.2d 43]; and *Woolams* v. *Woolams, supra*, 115 Cal.App.2d 1, 6.) It has been held that the provisions of section 206 justify the award of an allowance for the support of an adult daughter in a divorce action in which a divorce was denied but separate maintenance was provided. (*Anderson* v. *Anderson* (1899) 124 Cal. 48, 54-55 [56 P. 630, 57 P. 81, 71 Am.St.Rep. 17]; and see *Younger* v. *Younger* (1931) 112 Cal.App. 445, 446 [296 P. 1104]; and *Lewis* v. *Lewis, supra*, 174 Cal. 336, 338-342, which recognizes *Anderson* and holds that a minor may not bring an independent action for support against a parent deprived of custody by a divorce decree, but must enforce her rights in those proceedings; cf. Civ. Code, § 137.1 as enacted 1951.) Section 136 of the Civil Code which defines the power of the court to provide separate maintenance "[t]hough judgment of divorce is denied," neither as enacted nor as amended (Stats. 1905, ch. 475, § 1, p. 634), contained any provision limiting maintenance to the minority of the children. Section 138 of the Civil Code which formerly dealt with the power of the court to provide for the care, education, support and maintenance of the offspring in a divorce action was, however, limited to "during the minority of any chil-

[6]Civil Code, section 206, provides: "It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding."

dren'' by amendments in 1905; and this restriction was carried over in 1951 to section 139 in its present form. (See fns. 4 and 5, *supra.*)

In *Rosher* v. *Superior Court* (1937) 9 Cal.2d 556, 559-560 [71 P.2d 918], the question presented was whether a father could be required to support his daughter after she attained the age of 18 years, when the original order for her support was made before an amendment which raised the age of majority of a female from 18 to 21 years. (Stats. 1927, ch. 661, § 1, p. 1119.) The District Court of Appeal, Second District, Division Two (Cal.App., 1936) 62 P.2d 1384, 1385-1386) upheld the order on the ground that section 139 of the Civil Code (as it read prior to the 1951 revision) was not limited to the minority of the children, and *Anderson* v. *Anderson, supra,* 124 Cal. 48, established that an allowance for an adult child could be proper. On hearing the Supreme Court held that the amendment applied to pending proceedings and authorized the allowance until age 21 in any event. The opinion states: ''The conclusions above reached render it unnecessary to discuss the power of the court to make support orders for the benefit of adult children.'' (9 Cal.2d at p. 561.) Transmigration of the principles of the superseded opinion would not avail defendant here, because of the amendments to section 139 and the fact that it only authorizes an allowance against the party against whom the decree is granted.

The motion in this case was addressed to securing ''an order requiring plaintiff to contribute toward the support and maintenance of *the minor child* of the parties.'' (Italics added.)　　The findings filed March 2, 1965 recited that Bruce is 20, and also recited that he ''is a mentally disturbed person and is in need of specialized care, maintenance and treatment.'' The order filed March 3, 1965 purports to be prospective in operation without reference to the term of the son's minority.

The court raised this question on its own motion at oral argument and invited comment by the parties. It appears that the rights and obligations of the respective parties, including the son, are affected by guardianship and commitment proceedings to which he is a party. These complications suggest that proceedings for the enforcement of such obligation as the parents may have to support him as an adult under the provisions of section 206 of the Civil Code be separately prosecuted.

The order is erroneous insofar as it purports to provide for

the support of Bruce as an adult incapable of self support. It is urged that to require a separate action under Civil Code section 137.1 because the concededly dependent child attained his majority, when the trial court had jurisdiction of the parents and their respective obligations to their son at the time the proceedings were instituted, would be "a real triumph of legal red tape." The fact of the matter is that the Legislature has failed to provide for, and, in fact expressly limited, the power of the court to provide for the support of adult children in divorce proceedings. The question of parentage and age of the children are matters which once resolved leave only the issue of need of the child and ability of the parents to be resolved. The question of whether a child is a "poor person who is unable to maintain himself by work" may not always be so ready of solution as a predicate upon which further inquiry as to need and ability is made.

There is no need for unnecessary duplication of court proceedings. The initial proceedings demand revision in accordance with the views herein expressed. Provisions for future support, whether prosecuted in the original or new proceedings, would require current appraisal of the needs of the son and the ability of the parents. In the event such proceedings are instituted any overlap between the revision of the old and the prosecution of the new may be avoided by consolidation if appropriate.

The appeals from the minute order of November 3, 1964, the written order of November 12, 1964, the minute orders of February 1, and February 2, 1965, are dismissed. The written order of March 3, 1965 is reversed and the cause remanded for proceedings in accordance with the directions contained in this opinion. Appellant to recover costs on appeal.

Sullivan, P. J., and Molinari, J., concurred.

. Respondent's petition for a hearing by the Supreme Court was denied November 30, 1966.